KEITH SHAPIRO, ESQ.
Illinois Bar No. 6184374
NANCY A. PETERMAN, ESQ.
Illinois Bar No. 6208120
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: 312-456-8400
Facsimile: 312-456-8435
Email: shapirok@gtlaw.com
Email: petermann@gtlaw.com

BOB L. OLSON, ESQ.
Nevada Bar No. 3783
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: 702-792-3773
Facsimile: 702-792-9002
Email: olsonb@gtlaw.com

*Proposed Counsel for Debtor and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>SHENGDATECH, INC.,<br><br>      Debtor.<br><hr>SHENGDATECH, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>XIANGZHI CHEN, et al.,[1]<br><br>   Defendants. | Case No. BK-11-52649<br><br>Chapter 11<br><br>**Adv. Pr. No.** |

## ADVERSARY PROCEEDING COMPLAINT

The above captioned Plaintiff ShengaTech, Inc., the debtor and debtor in possession (the "<u>Debtor</u>"), for its Complaint against the above defendants (collectively, and as more particularly listed on <u>Exhibit 1</u> attached hereto, the "<u>Defendants</u>"), sets forth and alleges:

### NATURE OF THE CASE

1. The Special Committee of the Debtor's Board of Directors authorized and

---

[1] The Defendants to this action are listed on Exhibit 1 attached hereto.

1

directed the filing of a Chapter 11 case, on behalf of the Debtor, in order to restructure the Debtor's business operations and to allow the Debtor, through its Special Committee, to continue its ongoing special investigation into the financial affairs of the Debtor and the actions which occurred under the direction and knowledge of former management, including the Debtor's former President and Chief Executive Officer and largest shareholder, Chen Xiangzhi ("Mr. Chen").

2. More specifically, as part of this ongoing special investigation, the Special Committee of the Debtor's Board of Directors has determined that certain of the Debtor's financial records may have been falsified in whole or in part and that serious issues remain unanswered regarding the financial condition of the Debtor and its overall business operations. The Special Committee continues to use its best efforts to obtain a true understanding of the Debtor's affairs, but those efforts have been thwarted and obstructed by former management of the Debtor, including Mr. Chen, making the Special Committee's work incomplete.

3. After consultation with the Debtor's business and legal professionals, including those retained by the Special Committee, and in an exercise of its fiduciary duties, the Special Committee was left with no choice but to remove management, including Mr. Chen as the Debtor's President and CEO, and appoint an independent party, Michael Kang, of Alvarez & Marsal North America LLP ("A&M") to act as Chief Restructuring Officer ("CRO") and the Debtor's sole officer to (i) manage the Debtor's business operations, (ii) assist the Debtor in conducting its ongoing investigation, and (iii) restructure the Debtor's operations. The Special Committee further determined that the commencement of this adversary proceeding and request for injunctive relief were necessary in order to allow the Debtor to complete its investigation, prevent shareholders and Board members, including Mr. Chen and others acting in concert with him, from interfering with the Special Committee's ongoing investigation into the Debtor's affairs, safeguard assets for creditors, and reorganize the Debtor.

4. Given the importance of the Special Committee and its role in these proceedings, the Debtor hereby seeks declaratory and injunctive relief pursuant to Sections 105, 362, 541 and 1107 of the United State Bankruptcy Code to affirm that the Special Committee has acted pursuant to and consistent with the authority granted to it by the Debtor's Board of Directors, including the commencement of Debtor's Chapter 11 Case and the selection of a Chief Restructing Officer to assist with these proceedings, and to obtain injunctive relief from this Court to ensure that the Special Committee and the CRO remain intact throughout these proceedings with the powers granted to them by the Debtor pursuant to the March 4, 2011 Resolution and the August 19, 2011 Resolution to ensure the Debtor's successful reorganization.

## JURISDICTION

5. On August 19, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157. The relief requested herein is authorized under Sections 105(a), 362, 541 and 1107(a) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 7001 and 7065, and 28 U.S.C. § 2201.

7. Venue in this district is proper pursuant to 28 U.S.C. § 1409(a) as a proceeding arising under Title 11 of the United States Code.

## PARTIES

8. The Debtor is a Nevada corporation with its principal place of business in China. The Debtor manufactures a specialty additive known as nano-precipitated calcium carbonate ("NPCC"). NPCC is used in a variety of products to enhance their durability and efficiency and is widely applied in the paint, paper, plastic and rubber industries and used for building materials such as PVC. The Debtor conducts its manufacturing operations through several

affiliated companies in China (the "PRC Companies")

9. Defendants in this adversary proceeding are the Debtor's shareholders and Board members. See Exhibit 1. They include the Debtor's former President and Chief Executive Officer and largest shareholder, Mr. Chen. Mr. Chen owns over 42.25% of the outstanding shares of the Debtor, making him the Debtor's largest shareholder.

## THE EVENTS GIVING RISE TO THIS CHAPTER 11 CASE

**KPMG's March 2011 Letter, the Formation of the Special Committee, and the Special Committee's Investigation**

10. When auditing the Debtor's financial statements for the fiscal year ending December 31, 2010, KPMG reported discovering "potentially serious discrepancies and unexplained issues" relating to the Debtor's financial records. On March 2, 2011, KPMG contacted and informed the Debtor's Audit Committee regarding these potential discrepancies, and on March 3, 2011 provided written notice to the Audit Committee detailing information relating to, among other things, the inability to confirm sales amounts, sales terms, and outstanding balances; and undisclosed related party transactions.

11. On March 4, 2011, one day after KPMG informed the Audit Committee of the potential issues it discovered, the Debtor held a special meeting of the Board and, by Board resolution, created the Special Committee composed of the independent directors comprising the Audit Committee to oversee an internal investigation. A true and correct copy of the Board resolution creating the Special Committee (the "March 4, 2011 Resolution") is attached to the Declaration of Sheldon B. Saidman as Exhibit B.

12. The March 4, 2011 Resolution authorizes the Special Committee to "(i) conduct an independent review and investigation of issues identified by KPMG and any other matters the special committee deems appropriate"; (ii) "execute whatever agreements, including but not limited to engagement of independent counsel, independent accountants and other independent experts . . . as deemed necessary by the Special Committee"; (iii) "take any legal or other

action(s) that the Special Committee in its sole discretion deems in the interests of the Company and its stockholders"; and (iv) to commence any "actions as may be needed to identify, collect and safeguard the Company's assets." The March 4 2011 Resolution further resolves that:

(a) The Special Committee is charged with reaching its own independent determinations and conclusions regarding the Investigation Matters and, accordingly, shall be not be bound by any determinations or conclusions that the Board or any Board committee has reached or may in the future reach regarding such matters;

(b) The Special Committee is authorized to determine, in its sole discretion, whether to commence, prosecute, terminate, and/or compromise litigation against any person or entity arising out of or relating to the Investigation Matters, including actions as may be needed to identify, collect and safeguard the Company's assets;

(c) The Special Committee is authorized to take any other action, including the initiation and prosecution of litigation for equitable, declaratory and/or monetary awards, that the Special Committee deems appropriate in its sole discretion, against any person or entity arising out of or related to the Investigation Matters based upon the Special Committee's determination that such action is in the interests of the Company and its stockholders.

13. Pursuant to the broad grant of authority vested in the Special Committee under the March 4, 2011 Resolution, on March 7, 2011, the Special Committee engaged the law firm of O'Melveny & Myers LLP ("OMM") to conduct an independent investigation into the potential issues raised by KPMG. In turn, OMM retained PricewaterhouseCoopers LLP ("PwC") to provide forensic accounting support for its investigation. OMM commenced its investigation the following day and began preserving the Debtor's documents and records at that time by preserving and imaging relevant computers and accounting servers in China. OMM was also given access to data from KPMG.

14. Soon after the investigation began, problems began to surface, including the inability of KPMG to verify the Debtor's cash accounts. As a result of this development, the Special Committee proposed and the Board approved a resolution to transfer control of the

Debtor's cash assets by consolidating excess cash into accounts over which the Chairman of the Special Committee would have signatory authority and adopting a cash control validation plan (the "Cash Control Plan").   A true and correct copy of the minutes containing the resolution and attaching the Cash Control Plan as an exhibit is attached to the Declaration of Sheldon B. Saidman as Exhibit C.

15. Further efforts to verify the Debtor's cash accounts pursuant to the Cash Control Plan were thwarted and unsuccessful.  The Special Committee instructed teams of professionals from OMM and PwC to visit financial institutions holding the Debtor's accounts in China in order verify the Debtor's cash accounts, but managers at the Debtors' PRC Companies obstructed those efforts.  The Special Committee was informed that the managers: stalled or otherwise attempted to derail trips to the Debtor's financial institutions; refused to cooperate with OMM and PwC; once at the banks, attempted to steer the team to specific persons at the banks, rather than permit the OMM and PwC teams to speak with other identified individuals; and when the OMM and PwC teams refused to meet with particular bank employees chosen by the managers, the managers departed and refused to assist the OMM and PwC teams.

16. The Special Committee has also been unable to authenticate the veracity of certain U.S. certificates of deposits.  As part of the cash verification process, Mr. Chen provided photocopies of CDs allegedly held in the name of Faith Bloom, the Debtor's wholly owned subsidiary, as evidence that the Debtor had certain cash on hand.  The Special Committee has been unable to verify the authenticity of those CDs and despite making repeated requests for such information, Mr. Chen has been nonresponsive.  The Special Committee has learned that the bank which issued the CDs has been unable to verify them and, in fact, has no record of issuing them to Faith Bloom.

17. On April 29, 2011, KPMG formally resigned as auditor of the Debtor based upon the discrepancies and/or unexplained issues relating to the Debtor's financial records and

given its finding that senior management had not taken timely and appropriate remedial actions with respect those issues.

18. On April 20, 2011, the NASDAQ Listing Qualification Staff (the "Staff") issued a Delisting Letter to the Debtor wherein it determined to delist the Company's securities from NASDAQ as a result of the Debtor's failure to file its 2010 Form 10-K, among other things. The Debtor appealed the Staff's decision to the NASDAQ Listing Qualifications Panel (the "Panel") and submitted a plan for compliance which included the completion of the Cash Control Plan. On June 8, 2011, the Panel determined to delist the Company's securities from NASDAQ. In its decision, the Panel cited the discrepancies found by KPMG and the Debtor's failure to complete its Cash Control Plan. Believing that the Cash Control Plan was a "critical component" of the investigation, the Panel determined that management was obstructing the Audit Committee's ability to fulfill its duties and responsibilities under Listing Rule 5603(c)(3) and Section 10A(m)(2) of the Securities and Exchange Act and were public interest concerns. The Panel decision resulted in the suspension of the Company's securities on the NASDAQ market effective with the open of business on June 10, 2011.

19. On June 21, 2011 the Company appealed the Panel Decision to the NASDAQ Listing and Hearing Review Council (the "Listing Council"). On July 1, 2011, the Staff submitted a brief to the Listing Council in opposition. In its brief, the Staff highlighted the Debtor's failure to implement the Cash Control Plan. The Listing Council has not yet made its determination.

20. As of this date, the Debtor's securities remain suspended from the NASDAQ market. As of this date, the Debtor has been unable to and has not fully implemented or completed the Cash Control Plan because of the actions of shareholders and others, including Mr. Chen, as described more fully below.

**Subsequent Findings From the Special Committee's Investigation Into the Debtor's Financial Condition and Business Operations**

21. As set forth above, since learning of the potential serious discrepancies in the Debtor's financial statements in March 2011, the Special Committee has been working tirelessly and expeditiously with various professionals to investigate the financial condition of the Debtor and its business operations. As part of that process, the Special Committee retained the international law firm of Skadden, Arps ("Skadden" or "Special Committee Counsel") to work with PwC and assist with the investigation. As commenced by OMM and followed up by Skadden, the investigation has involved company visits, interviews, and the imaging and review of accounting records and other electronic data. Skadden has provided the Special Committee with regular updates to address issues related to the investigation. Skadden and the Special Committee, however, have been unable to complete the investigation because their efforts to do so have been obstructed by Mr. Chen and former managers who, on information and belief, have been acting in concert with him. Mr. Chen has refused to participate in meetings with the Board or be interviewed by counsel for the Special Committee, further jeopardizing the Debtor's business operations and its ability to address the serious issues it is facing. Dongquan Zhang ("Mr. Zhang"), another of the Debtor's Board members, also refuses to participate in meetings with the Board and Special Committee.

22. Skadden's investigation, while far from complete, has determined that certain of the financial records of the Debtor may have been falsified in whole or in part and that serious issues remain unanswered regarding the financial condition of the Debtor and its overall business operations. On August 19, 2011, Skadden presented its preliminary report and findings to the Special Committee. In its preliminary report, Skadden detailed both the investigative efforts to date, the efforts undertaken by Mr. Chen and others to obstruct and hinder the investigation, and confirmed material irregularities and/or inaccuracies in the financial records of the Debtor. Among other things, the report calls into serious question the

accuracy of payments allegedly made to the Debtor by various customers or the sales allegedly made, transactions the Debtor is reported to have engaged in with related parties owned by Mr. Chen which have not been supported, and suggests that sales are vastly overstated.

**Recent Actions by the Special Committee and the Immediate Need for Judicial Relief**

23.     As a result of the serious issues affecting the Debtor, the information uncovered during the Special Committee's investigation and the ongoing interference from Mr. Chen and others within the Debtor's management, the Special Committee determined that it was necessary to remove Mr. Chen from his positions as President and Chief Executive Officer of the Debtor and to appoint an independent party to oversee the Debtor's business and assist the Special Committee with its ongoing investigation.

24.     By resolution dated August 19, 2011, the Special Committee removed management, including without limitation, Mr. Chen from his management positions, and appointed Michael Kang of A&M as CRO and sole officer of the Debtor, who will work with the Special Committee to investigate the discrepancies in the Debtor's financial records, including verifying the Debtor's cash account and tracing any funds that appear to have been moved out of the Debtor's accounts to certain of its China subsidiaries.  The CRO will also be charged with working with the Noteholders, who are the Debtor's largest creditor constituency, other creditors, and shareholders to attempt to achieve a consensual resolution the Debtor's outstanding obligations.  A copy of the August 19, 2011 Resolution is attached to the Declaration of Sheldon B. Saidman as <u>Exhibit D</u>.

25.     The Special Committee has further determined that the successful reorganization of the Debtor depends upon the continued existence of the Special Committee and the CRO, and the preservation of their independent powers granted to them pursuant to the March 4, 2011 Resolution and the August 19, 2011 Resolution throughout these proceedings.  The need for this relief has become even more imminent given the recent actions by Mr. Chen to change the

composition of the Debtor's Board, the effect of which threatens to further hinder or end the Special Committee's ongoing investigation and/or allow Mr. Chen to replace the Special Committee with new members acting under his direction or control.

26. Specifically, although Mr. Chen has been removed from his management positions by virtue of the resolution passed by the Special Committee, Mr. Chen remains the largest shareholder of the Debtor and continues to be vested with all of the rights associated with a controlling shareholder. On July 28, 2011, Mr. Chen and four other stockholders of the Debtor -- collectively with Mr. Chen representing approximately 52% of the total current issued and outstanding voting stock of the Debtor -- delivered written consents expressing an intent to appoint Gongbo Wang ("Mr. Wang") to a currently vacant position on the Debtor's Board of Directors. ***The effective date of Mr. Chen's hand-picked selection of Mr. Wang as a member of the Board is this Thursday, August 25, 2011***.

27. Presently, the Board is currently comprised of Mr. Chen and three independent directors: A. Carl Mudd, Sheldon B. Saidman and Dongquan Zhang. Each of the independent directors has served on the Board since 2007. Presently, the existing four-member Board is hopelessly deadlocked and unable to function, given Messrs. Chen's and Zhang's refusal to participate in certain meetings of the Board, refusal to meet as a Board prior to the appointment Mr. Wang and, to the extent meetings of the Board can be held, either votes cannot be taken (given Mr. Chen's and Mr. Zhang's refusal to vote) or the Board votes are two to two.

28. The appointment of Mr. Wang, however -- coming on the heels of the conclusion of the initial phase of the Special Committee's ongoing investigation -- would materially change the current composition of the Board and potentially empower Mr. Chen with the votes needed to remove the members of the Special Committee, change the course of the ongoing investigation, and impede the efforts of the Special Committee to ensure a successful reorganization.

29. The Special Committee's composition and authority and the CRO's authority must remain intact so that the Debtor is able to operate effectively during these proceedings.

30. An actual controversy exists between the Special Committee, CRO, Board, and the shareholders of the Debtor, including its controlling shareholder and former President and CEO Mr. Chen, and pursuant to 28 U.S.C. § 2201 this Court has the power to declare the rights of the parties hereto and to give such other and further relief as may be necessary.

**FIRST CAUSE OF ACTION**
(Declaratory Judgment)

31. Debtor repeats and realleges the allegations of paragraphs 1 through 30 as though fully set forth herein.

32. The Nevada Corporation Act governs the operations of corporations organized under Nevada law.

33. Nevada Revised Statue 78.125 expressly authorizes the creation of special committees, the designation of powers to those committees, and the membership of committees. NRS 78.125 specifically states:

> Unless it is otherwise provided in the articles of incorporation, the board of directors may designate one or more committees which, to the extent provided in the resolution or resolutions or in the bylaws of the corporation, have and may exercise the powers of the board of directors in the management of the business and affairs of the corporation.

34. NRS 78.125 requires only that each committee include at least one director of the company. Unless the articles of incorporation or the bylaws provide otherwise, the board of directors may appoint natural persons who are not directors to serve on committees.

35. The Debtor's Articles of Incorporation state:

> [T]he board of directors is expressly authorized as follows: . . . . By resolution passed by a majority of the whole board, to designate one or more committees, each committee to consist of one or more of the directors of the corporation, which, to the extent provided in the resolution or in the bylaws of the corporation, shall have and may exercise the powers of the board of directors in the management of the business and affairs of the corporation . . . .

36. The Debtor's Bylaws similarly state:

> The Board of Directors may, by resolution passed by a majority of the entire Board of Directors, designate one (1) or more committees, each committee to consist of one (1) or more of the directors of the Corporation. . . . . Any committee, to the extent allowed by law and provided in the resolution establishing such committee, shall have and may exercise all powers and authority of the Board of Directors in the management of the business and affairs of the Corporation.

37. The March 4, 2011 Resolution is a valid and enforceable resolution of the Board.

38. The March 4, 2011 Resolution creates the Special Committee and empowers it to take, *inter alia*, "any legal or other action(s) that the Special Committee in its sole discretion deems in the interest of the [Debtor] and its stockholders" and "determine, in its sole discretion, whether to commence, prosecute, terminate, and/or compromise litigation against any person or entity arising out of or relating to the Investigation Matters, including actions as may be needed to identify, collect and safeguard the Company's assets."

39. The Special Committee was authorized under the March 4, 2011 Resolution to conduct its investigation into the Debtor's financial condition and business operations as set forth in this Complaint.

40. The Special Committee was authorized under the March 4, 2011 Resolution to remove Mr. Chen from his positions as President and CEO of the Debtor effective August 19, 2011.

41. The Special Committee was authorized under the March 4, 2011 Resolution to commence the Chapter 11 Case on behalf of the Debtor.

42. The Special Committee was authorized under the March 4, 2011 Resolution to appoint Michael Kang of A&M to serve as CRO to assist the Special Committee in conducting its investigation and reorganizing the Debtor in connection with the Chapter 11 Case.

43.    The Special Committee is authorized under the March 4, 2011 Resolution to continue taking any legal or other actions that the Special Committee in its sole discretion deems in the interest of the Debtor and its stockholders and to continue controlling the business operations of the Debtor throughout the Chapter 11 Case in accordance with the provisions of the March 4, 2011 Resolution and the Bankruptcy Code.

44.    By virtue of the March 4, 2011 Resolution authorizing the employment and direction of company professionals, the Special Committee is the proper party to exercise the debtor in possession powers consistent with Bankruptcy Code Section 1107(a).

WHEREFORE, the Special Committee, acting on behalf of the Debtor, respectfully requests judgment in its favor and against the defendants as follows:

(a)    Declaring that the March 4, 2011 Resolution is binding and effective;

(b)    Declaring that the Special Committee has acted in accordance with its rights and obligations under the March 4, 2011 Resolution, including the actions taken by it in connection with the investigation, the removal of Mr. Chen as President and CEO, the commencement of the Chapter 11 Case, and the appointment of Michael Kang of Alvarez & Marsal North America LLP as CRO and sole officer of the Debtor;

(c)    Declaring that the Special Committee is authorized to continue acting on behalf of the Debtor consistent with the powers granted to it under the March 4, 2011 Resolution and that the Special Committee is the proper party to exercise the debtor in possession powers granted under the Bankruptcy Code throughout the Chapter 11 Case.

(d)    Granting such other and further relief as the Court may deem proper and just.

**SECOND CAUSE OF ACTION**
(Injunctive Relief)

45.    Debtor repeats and realleges the allegations of paragraphs 1 through 44 as though fully set forth herein.

46. The March 4, 2011 Resolution creates the Special Committee and empowers it to take, *inter alia*, "any legal or other action(s) that the Special Committee in its sole discretion deems in the interest of the [Debtor] and its stockholders." Since the March 4, 2011 Resolution, the Special Committee has been performing its responsibilities and exercising its rights pursuant to the March 4, 2011 Resolution and continues to do so.

47. Shareholders and Board members, including Mr. Chen, and others have interfered with the investigation and work of the Special Committee without having any right to do so. These actions have adversely affected the Debtor and continue to jeopardize the work of the Special Committee, its ability to address the serious issues facing the Debtor, and its ability to complete its investigation and reorganize the Debtor as a going concern.

48. Recent conduct by shareholders and Board members, including Mr. Chen, and others further threatens the continued existence of the Special Committee and the CRO and the work they need to perform.

49. Should the Court *not* maintain the existence of the Special Committee and CRO, keep the Special Committee and CRO intact throughout the Chapter 11 Case, and continue to allow them to operate pursuant to the powers granted to pursuant to the March 4, 2011 Resolution and the August 19, 2011 Resolution, there is a serious risk that the Debtor will not be able to reorganize successfully and address the serious issues facing the company.

50. An injunction allowing the Special Committee and CRO to remain intact throughout the Chapter 11 Case so that they can complete the investigation, control the business operations of the Debtor going forward, and ensure that the Debtor's restructuring will not be interfered with is in the best interest of the estate, its creditors, and other parties in interest, and vital to the success of the Debtor's reorganization. Shareholders of the Debtor will not be harmed if the requested injunction is granted.

WHEREFORE, the Special Committee, acting on behalf of the Debtor, respectfully requests judgment in its favor and against the defendants as follows:

(a) Temporarily, preliminarily, and permanently enjoining the shareholders and/or the Debtor's Board from interfering with the Special Committee or CRO or taking any steps to remove the members of the Special Committee or the CRO or to modify any of the powers granted to the Special Committee or the CRO pursuant to the March 4, 2011 Resolution or the August 19, 2011 Resolution or any powers delegated thereunder; and

(b) Granting such other and further relief as the Court may deem proper and just.

Respectfully submitted by:

/s/ Bob L Olson
BOB L. OLSON, ESQ.
Nevada Bar No. 3783
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada  89169
Telephone:  702-792-3773
Facsimile:   702-792-9002
Email: olsonb@gtlaw.com

and

KEITH SHAPIRO, ESQ.
Illinois Bar No. 6184374
NANCY A. PETERMAN, ESQ.
Illinois Bar No. 6208120
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois  60601
Telephone:  312-456-8400
Facsimile:   312-456-8435
Email: shapirok@gtlaw.com
Email: petermann@gtlaw.com

*Proposed Counsel for
Debtor and Debtor in Possession*