1  James J. Pisanelli, Bar No. 4027
   jjp@pisanellibice.com
2  Christopher R. Miltenberger, Bar No. 10153
   crm@pisanellibice.com
3  PISANELLI BICE PLLC
   3883 Howard Hughes Parkway, Suite 800
4  Las Vegas, Nevada 89169
   Telephone:  (702) 214.2100
5  Facsimile:  (702) 214.2101

6  Louis R. Strubeck (*pro hac vice pending*)
   Stephen Dollar (*pro hac vice pending*)
7  FULBRIGHT & JAWORSKI L.L.P.
   2200 Ross Avenue, Suite 2800
8  Dallas, Texas 75201-2784
   Telephone: (214) 855-8000
9  Facsimile: (214) 855-8200

10 *Counsel for A. Carl Mudd and Sheldon B. Saidman*

11
              **UNITED STATES BANKRUPTCY COURT**
12
                **FOR THE DISTRICT OF NEVADA**
13

14 IN RE:                                    Case No. BK- 11-52649-BTB

15 SHENGDATECH, INC.,                        Chapter 11

16                                           **MOTION TO ENFORCE
                                             PLAN INJUNCTION**
17        Debtor.

18

19        A. Carl Mudd and Sheldon B. Saidman (collectively, the "Independent Directors")

20 respectfully submit this motion (the "Motion") to enforce the injunction in ShengdaTech, Inc.'s

21 ("ShengdaTech" or "Debtor") confirmed *First Amended Chapter 11 Plan of Reorganization, As*

22 *Modified* [Docket No. 652] (the "Plan") and this Court's *Order Confirming First Amended*

23 *Chapter 11 Plan of Reorganization, As Modified* [Docket No. 655] (the "Confirmation Order")

24 against Oaktree Capital Management, L.P. ("Oaktree"), on behalf of certain of its managed

25 accounts; Oaktree (Lux.) Funds–Oaktree Convertible Bond Fund; Oaktree High Income

26 Convertible Fund, L.P.; Oaktree High Income Convertible Fund II, L.P.; Oaktree Non-U.S.

27 Convertible Securities Fund, L.P.; Oaktree TT Multi-Strategy Fund, L.P.; OCM Global

28 Convertible Securities Fund; OCM International Convertible Trust; OCM Non-U.S. Convertible

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

Securities Fund; Lazard Asset Management LLC ("Lazard"), on behalf of certain of its managed accounts; HFR CA Lazard Rathmore Master Trust; AG OFCON Ltd. ("AG OFCON"); Zazove Associates, LLC ("Zazove"), on behalf of certain of its managed funds and accounts; CNH CA Master Account, L.P.; CNH Diversified Opportunities Master Account, L.P.; Advent Claymore Convertible Securities and Income Fund II; AQR Capital Management, LLC; AQR Convertible Opportunities Bond UCITS Fund; AQR Delta Master Account, L.P.; AQR Opportunistic Premium Offshore Fund L.P.; and Delaware Public Employees Retirement System (collectively, the "Plaintiffs"), and in support of this Motion respectfully show as follows:

## I.    INTRODUCTION

ShengdaTech filed for bankruptcy on August 19, 2011, and this Court entered the Confirmation Order confirming the Plan on October 3, 2012.  The Plan and Confirmation Order contain release provisions that extinguish all claims against ShengdaTech and certain third parties relating to, among other things, the Chapter 11 Case or the sale of securities issued by ShengdaTech.  The same release and injunction provisions also enjoin any party from taking actions inconsistent with the releases or any other Plan provisions.  These release and injunction provisions are integral components of the Plan, which was overwhelmingly approved by ShengdaTech's creditors and confirmed by this Court.  Were it not for the protections afforded to the Debtor and critical third parties by the release and injunction provisions, the Plan—which all parties as well as this Court concluded is fair to and in the best interests of ShengdaTech's creditors—would never have been approved.

In March 2013, Plaintiffs filed a lawsuit (the "Lawsuit") against the Independent Directors as well as former ShengdaTech executives asserting a single cause of action for negligent misrepresentation and seeking to recover damages arising from ShengdaTech's default on certain debt securities purchased by Plaintiffs.  In essence, Plaintiffs contend that they would not have purchased the securities, and thus sustained losses, were it not for certain allegedly negligent representations made by the Independent Directors and others upon which Plaintiffs relied.

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

2

1    Upon voting for and not objecting to the Plan, Plaintiffs released the claims alleged in the

2    Lawsuit. Accordingly, Plaintiffs must not be permitted to proceed in violation of the Plan and

3    Confirmation order by continuing further with their Lawsuit.

4    This case does not involve a third party release forced upon uninformed or objecting

5    creditors. Rather, the Plan and the releases and injunctions therein were the product of prolonged

6    negotiations between all interested parties, and were approved by virtually all of ShengdaTech's

7    unsecured creditors—including Plaintiffs. The Plan was endorsed by the Official Committee of

8    Unsecured Creditors of ShengdaTech (the "Committee"), of which two of the Plaintiffs were

9    members. Moreover, if Plaintiffs succeed in mounting an improper collateral challenge to the

10   release provisions (which are now entitled to res judicata effect) then ShengdaTech, the

11   Independent Directors, and other parties critical to the company's reorganization will likely be

12   faced with countless lawsuits that would undermine the finality of the Plan, which has been

13   consummated, and reduce the assets of the Liquidating Trust to Plaintiffs' and the other creditors'

14   detriment. Such a result is contrary to the policies animating the Bankruptcy Code and improper

15   under applicable law.

16   For these reasons, by this Motion the Independent Directors request that the Court,

17   pursuant to its exclusive jurisdiction over all matters arising out of and related to the Chapter 11

18   Case and Plan, enjoin Plaintiffs from proceeding further with their released claims against the

19   Independent Directors in violation of the injunction in the Plan and Confirmation Order and

20   award the Independent Directors their costs and attorneys' fees incurred as a result of Plaintiffs'

21   willful violation of the injunction.

22   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

23   **A.    ShengdaTech's Bankruptcy Filing and Plan of Reorganization**

24   On August 19, 2011 (the "Petition Date"), ShengdaTech filed a voluntary petition for

25   relief under chapter 11 of the Bankruptcy Code. On June 21, 2012, ShengdaTech proposed its

26   First Amended Chapter 11 Plan of Reorganization [Docket No. 522], which was subsequently

27   modified on June 26 [Docket No. 539] and August 30 [Docket No. 652].

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

3

The Plan designates five (5) Classes of Claims and one (1) Class of Equity Interests in the Debtor, and provides for the creation of a post-confirmation Liquidating Trust to hold and administer all of ShengdaTech's assets for the Holders of Claims and Equity Interests in accordance with the Plan and accompanying Liquidating Trust Agreement.

On June 25, 2012, the Court held a hearing on the adequacy of the First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization [Docket No. 523]. Then, on July 3, the Court entered an Order [Docket No. 545] (the "Solicitation Procedures Order"), pursuant to which the Court, among other things: (i) approved the revised First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization [Docket No. 540] (the "Disclosure Statement"); (ii) established procedures for soliciting and tabulating votes to accept or reject the Plan; (iii) set voting and objection deadlines; and (iv) scheduled a hearing to consider confirmation of the plan (the "Confirmation Hearing").

To obtain the requisite acceptances of the Plan, ShengdaTech commenced the solicitation of votes from the Holders of Claims and Equity Interests in Classes 3, 4, 5, and 6 (the "Voting Classes") who held such Claims or Equity Interests as of April 3, 2012 (the "Voting Record Date"). In accordance with the Solicitation Procedures Order, ShengdaTech caused Jeffrey S. Stein of The Garden City Group, Inc. (the "Claims Agent") to transmit the following to the Holders of Claims and Equity Interests: (i) a cover letter from ShengdaTech urging members of the Voting Classes to vote to accept the Plan; (ii), a letter from the Official Committee of Unsecured Creditors explaining the solicitation process, highlighting the releases in the Plan, and recommending to members of the Voting Classes that they vote to accept the plan; (iii) the Disclosure Statement and Plan; (iv) the Solicitation Procedures Order; (v) notice of the Confirmation Hearing; and (vi) an appropriate Ballot (as defined in the Solicitation Procedures Order) with a pre-addressed return envelope (collectively, the "Voting Packages").

Plaintiffs AG OFCON and Zazove were members of the Committee, which was appointed by the U.S. Trustee in the Chapter 11 Case to represent the interests of ShengdaTech's unsecured creditors. *See* Amended Notice of Appointment of Committee of Unsecured Creditors [Docket No. 213] (the "Notice of Appointment"). AG OFCON was elected to serve as chair of the

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1   Committee. Ex. 1, Plaintiffs' Complaint, ¶ 18. The Committee, aided by its counsel, endeavored

2   to obtain "the best possible recovery under the circumstances for the claims of unsecured

3   creditors and expedite the emergence of the Debtor from chapter 11." *See* Notice of Filing

4   Official Committee of Unsecured Creditors' Letter in Support of Debtor's Chapter 11 Plan of

5   Reorganization and Disclosure Statement [Docket No. 535] (the "Letter in Support"). The

6   Committee agreed in writing to support the Plan and Disclosure Statement, and submitted a letter

7   to that effect (which was included in ShengdaTech's solicitation package) alerting other

8   unsecured creditors to the release provisions, stating that the Plan represents a "consensual

9   resolution of" ShengdaTech's case, and "strongly recommend[ing]" that the creditors vote in

10  favor of the Plan because it "provides the best alternative for unsecured creditors." *See* Letter in

11  Support. Put simply, the Committee was not only aware of and agreed to accept the Plan,

12  including the release and injunction provisions set forth below, but it also actively sought

13  approval of the Plan and solicited affirmative votes from the unsecured creditors.

14       The Plan was overwhelmingly approved by the Voting Classes. The only objection to

15  confirmation of the Plan came from the Lead Plaintiffs in the securities class action, *In re*

16  *ShengdaTech, Inc. Sec. Litig.*, Case No. 11-CV-1918 (TPG) (the "Class Action"). *See* Objection

17  of Lead Plaintiffs to Disclosure Statement for the Chapter 11 Plan of Reorganization [Docket No.

18  512] (the "Objection"). The Lead Plaintiffs' Objection related to the scope of the Plan's release

19  and injunction provisions (discussed in detail below), and was resolved pursuant to the terms of

20  the Confirmation Order. *See* Findings of Fact, Conclusions of Law Regarding Confirmation of

21  the First Amended Chapter 11 Plan of Reorganization, As Modified [Docket No. 653] (the

22  "Findings of Fact"). Importantly, Plaintiffs chose not to join in the Objection.

23       The Court held the Confirmation Hearing on August 30, 2012, and, having reviewed the

24  Plan (as modified) and all relevant pleadings, statements, comments, and other information in the

25  record, issued its Confirmation Order approving the Plan. *See* Confirmation Order, ¶ 5; Findings

26  of Fact. Specifically, the Court found that "all persons in interest in the Chapter 11 Case had a

27  full and fair opportunity to appear and be heard at the Confirmation Hearing," and that votes to

28  accept or reject the plan had been "solicited fairly, in good faith, and in compliance with the

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations." *See* Findings of Fact, ¶¶ E–F. The Effective Date of the plan is October 17, 2012. Notice of (I) Effective Date of the Plan and (II) Professional Fee Bar Date [Docket No. 680].

**B.    Release and Injunction Provisions in the Plan and Confirmation Order.**

The Confirmation Order and Plan contain release provisions that extinguish all claims against ShengdaTech, the Independent Directors, and others (the "Released Parties"[1]) related to the Chapter 11 Case and related matters, including those arising before the Petition Date. These releases are an essential component of the Plan, and the Released Parties, including certain third parties such as the Independent Directors, are integral to the Plan's success. The release provision in the Confirmation Order states as follows:

18.    Releases by Holders of Claims and Equity Interests. Except as otherwise expressly provided in the Plan or this Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, **each Person that has held, currently holds, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, cause of action**, or liability of any nature whatsoever, or any Equity Interest, **shall be deemed to, completely and forever release, waive, void, extinguish, and discharge unconditionally** each and all of the Released Parties **of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies, and liabilities of any nature whatsoever** (including, without limitation, those arising under the Bankruptcy Code), whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, **then existing or thereafter arising**, in law, equity, or otherwise **that are or may be based in whole or part on any act, omission, transaction, event, or other circumstance taking place or existing on or prior to the Effective Date (*including prior to the Petition Date*) in connection with or related to (i) the *purchase or sale of any securities issued by the Debtor*,** [. . .] or (xi) the formation of, investigation by or other actions taken by, or on behalf of, the Special Committee to the present; *provided, however,* that (1) each Person that has submitted a ballot rejecting the Plan and electing, by checking the appropriate box on its ballot, not to grant the releases set forth in Article 11.1 (c) of the Plan with respect to the Released Parties and their respective successors and assigns (whether by operation of law or otherwise), and (2) each Person that held a Claim or Equity Interest entitled to vote and who abstained from voting to either accept

[1] The term "released parties" is defined in Article 1.97 of the Plan: "Released Parties" shall mean (i) the Debtor and its estate, [. . .] (v) **A. Carl Mudd and Sheldon B. Saidman in their capacity as directors of the Debtor**, Faith Bloom and the PRC Subsidiaries and any attorneys retained to represent them in their capacity as directors of the Debtor, Faith Bloom or the PRC Subsidiaries, (vi) **A. Carl Mudd and Sheldon B. Saidman in their individual capacities** and any attorneys retained to represent them in their individual capacities. . . ." (emphasis added).

or reject the Plan and elected, by checking the appropriate box on its ballot, not to grant the releases set forth in Article 11.1 (c) of the Plan with respect to the Released Parties and their respective successors and assigns (whether by operation of law or otherwise) shall not be bound to the releases set forth in Article 11.1 (c) of the Plan; **provided that, in each case, such Holder affirmatively elected not to be bound by the releases in Article 11.1 (c) of the Plan by returning the ballot appropriately designating such Holder as opting out of the release in Article 11.1 (c) of the Plan**. If not appropriately designed as opting out of the release in Article 11.1 (c) of the Plan, then such Holder shall be bound by such release. Notwithstanding the foregoing, nothing in Article 11.1 (c) of the Plan shall be construed to release any party from willful misconduct or gross negligence as determined by a Final Order . . . .

Confirmation Order, ¶ 18 (emphasis added). The language in the Plan is virtually identical:

11.1    Exculpation and Releases. [. . .] (c) **Releases by Holders of Claims and Equity Interests**. Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, **each Person that has held, currently holds, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, cause of action**, or liability of any nature whatsoever, or any Equity Interest, **shall be deemed to, completely and forever release, waive, void, extinguish, and discharge unconditionally <u>each and all of the Released Parties</u> of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies, and liabilities of any nature whatsoever** (including, without limitation, those arising under the Bankruptcy Code), whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, **then existing or thereafter arising, in law, equity, or otherwise that are or may be based in whole or part on any act, omission, transaction, event, or other circumstance taking place or existing on or prior to the Effective Date (*including prior to the Petition Date*) in connection with or related to (i) the <u>*purchase or sale of any securities issued by the Debtor*</u>, [. . .]; *provided, however,* that (1) each Person that has submitted a ballot rejecting the Plan may elect, by checking the appropriate box on its ballot, not to grant the releases set forth in this Article 11.1(c) with respect to the Released Parties and their respective successors and assigns (whether by operation of law or otherwise), and (2) each Person that holds a Claim or Equity Interest entitled to vote and who abstains from voting to either accept or reject the Plan may elect, by checking the appropriate box on its ballot, not to grant the releases set forth in this Article 11.1(c) with respect to the Released Parties and their respective successors and assigns  (whether by operation of law or otherwise); **and provided, further, however, that unless such Holder affirmatively elects not to be bound by the releases in this Article 11.1(c) by returning the ballot, as described herein, appropriately designating such Holder as opting out of the release in this Article 11.1(c), such Holder shall be bound by such release**. Notwithstanding the foregoing, nothing in this Article 11.1(c) shall be construed to release any party from willful misconduct or gross negligence as determined by a Final Order . . . .

1    Plan, Article 11.1(c) (emphasis added).

2          To ensure compliance with these release provisions, the Confirmation Order and Plan both

3    enjoin all persons subject to the releases from taking any action against the Released Parties

4    inconsistent with the Plan or Confirmation Order.   The injunction provisions are necessary to

5    preserve and enforce the release and the other provisions in the Plan and Confirmation Order and

6    are tailored to achieve that purpose.  The Confirmation Order provides as follows:

7          20.   Injunction Related to Exculpation and Releases. Except as provided in the
           Plan or this Confirmation Order, as of the Effective Date, (i) **all Persons that**

8          **hold, have held, or may hold a Claim, Equity Interest, or any other obligation,**
           **suit, judgment, damages, debt, right, remedy, Cause of Action or liability of**

9          **any nature whatsoever, relating to the Debtor or its assets, property or Estate,**
           **that is released or enjoined pursuant to Article XI of the Plan** and (ii) all other

10         parties in interest in this Chapter 11 Case are, and **shall be, permanently, forever**
           **and completely stayed, restrained, prohibited, barred and enjoined from**

11         **taking any of the following actions against any Released Party** or its property
           on account of such released liabilities, whether directly or indirectly, derivatively

12         or otherwise, on account of or based on the subject matter of such Claims, Equity
           Interests or other obligations, suits, judgments, damages, debts, rights, remedies,

13         causes of action or liabilities:

14               (a) **commencing**, conducting or continuing in any manner, directly or
                 indirectly, **any suit, action or other proceeding . . . in any forum**; [. . .]

15

16               (e) **commencing** or continuing in **any manner**, in any place of any
                 judicial, arbitration or administrative proceeding in any forum, **that does**

17               **not comply with or is inconsistent with the provisions of the Plan or the**
                 **Confirmation Order**.

18   Confirmation Order, ¶ 20 (emphasis added).  The Plan contains the following virtually identical

19   injunction provision:

20         (e)    Injunction Related to Exculpation and Releases. Except as provided in the
           Plan or the Confirmation Order, as of the Effective Date, (i) **all Persons that hold,**

21         **have held, or may hold a Claim, Equity Interest, or any other obligation, suit,**
           **judgment, damages, debt, right, remedy, Cause of Action or liability of any**

22         **nature whatsoever, relating to the Debtor or its assets, property or Estate,**
           **that is released or enjoined pursuant to this Article XI of the Plan** and (ii) all

23         other parties in interest in this Chapter 11 Case are, and **shall be, permanently,**
           **forever and completely stayed, restrained, prohibited, barred and enjoined**

24         **from taking any of the following actions against any Released Party** or its
           property on account of such released liabilities, whether directly or indirectly,

25         derivatively or otherwise, on account of or based on the subject matter of such
           Claims, Equity Interests or other obligations, suits, judgments, damages, debts,

26         rights, remedies, causes of action or liabilities:

27               1.     **commencing**, conducting or continuing in any manner, directly or
                 indirectly, **any suit, action or other proceeding . . . in any forum**; [...]

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

5.    **commencing** or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, **that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.**

Plan Article 11.1(e) (emphasis added).

**C.    Retention of Exclusive Jurisdiction in the Confirmation Order and Plan.**

To ensure compliance with the release and injunction provisions set forth above, the Confirmation Order and Plan provide that this Court shall retain exclusive jurisdiction over all matters related to Chapter 11 Case and the Plan.  Specifically, the Confirmation Order provides:

35.    **Retention of Jurisdiction.** Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, **the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, this Chapter 11 Case and the Plan** to the fullest extent permitted by law, including, among other things, jurisdiction to: [. . .]

(h) **determine and resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation, implementation or enforcement of the Plan** (and all exhibits and schedules to the Plan) or the Confirmation Order, **including the releases and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order**, or any entity's rights arising under or obligations incurred in connection therewith; [. . .]

(j) **issue injunctions,** enter and implement other orders or take such other actions **as may be necessary or appropriate to restrain interference** by any entity with Consummation, implementation or enforcement of the Plan or the Confirmation Order; [. . .]

(l) determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order; [. . .]

(o) **enforce all** orders, judgments, **injunctions, releases,** exculpations, indemnifications **and rulings entered in connection with this Chapter 11 Case;**

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1   Confirmation Order, ¶ 35 (emphasis added).  This broad retention of jurisdiction is consistent

2   with the Court's inherent authority to enforce its lawful orders,[2] and prevents circumvention of

3   the Plan and Confirmation Order via collateral attack in another forum.

4        **D.    Plaintiffs' Lawsuit**

5        On March 15, 2013, Plaintiffs sued Xianghzi Chen, Anhui Guo, Andrew Chen, Dongquan

6   Zhang, and the Independent Directors in the District Court for Clark County, Nevada, alleging as

7   their sole cause of action common law negligent misrepresentation.  Specifically, Plaintiffs allege

8   that they purchased ShengdaTech notes in May 2008 and May 2010 in reliance on false financial

9   information contained in the company's offering memoranda and SEC filings, and that the

10  Independent    Directors—Independent    Directors    and    Audit    Committee    Members    of

11  ShengdaTech—purportedly failed to exercise reasonable care and competence in verifying the

12  information contained therein.  The undersigned counsel represent the Independent Directors in

13  the Lawsuit.

14       During the course of discovery, the Independent Directors learned that Plaintiffs did not

15  opt out of the Plan and in fact affirmatively agreed to be bound by the release and injunction

16  provisions set forth above.  *See* Ex. 2, Declaration of Stephen M. Dollar.  Accordingly, on

17  January 24, 2014, counsel for the Independent Directors sent a letter to Plaintiffs' counsel

18  requesting that Plaintiffs voluntarily dismiss their claims with prejudice against the Independent

19  Directors pursuant to the release provisions in the Plan and Confirmation Order, or, in the

20  alternative, submit evidence proving that Plaintiffs had not released their claims by failing to opt

21  out of the Plan.  In their response letter dated January 27, 2014, Plaintiffs did not refute that they

22  had accepted the Plan, but nevertheless refused to dismiss their claims.  The Lawsuit is currently

23  set for a jury trial on November 4, 2014.

24

25  [2] *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary
    or appropriate to carry out the provisions of this title.  No provision of this title providing for the
26  raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte,
27  taking any action or making any determination necessary or appropriate to enforce or implement
    court orders or rules …").
28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1    Because Plaintiffs have refused to comply with and continue to violate the Plan, the Plan

2    injunction, and this Court's Confirmation Order by pursuing the exact claims they released upon

3    confirmation of the Plan, the Independent Directors have no choice but to bring this Motion to

4    enjoin Plaintiffs from proceeding further in violation of the Plan and Confirmation Order.

5    **III.    ARGUMENT AND AUTHORITIES**

6    Consistent with its inherent and statutory authority, this Court retained jurisdiction over all

7    matters arising out of and related to the Chapter 11 Case and Plan, including the enforcement of

8    the injunction.  As set forth in more detail below, Plaintiffs released the only claim alleged in the

9    Lawsuit by voting in favor of and agreeing to be bound by the Plan.  Accordingly, Plaintiffs are

10   enjoined from continuing to pursue their Lawsuit against the Independent Directors.

11   **A.    Plaintiffs Released their Sole Claim Against the Independent Directors.**

12   1.    The Releases Apply to a Claim for Negligent Misrepresentation.

13   Plaintiffs' sole cause of action for negligent misrepresentation against the Independent

14   Directors is prohibited by the release provisions in the Plan and Confirmation Order.  The

15   Independent Directors are "Released Parties" under the Plan. Plan, Article 1.97.  And as set forth

16   in detail above, the release provisions discharge unconditionally each of the Released Parties from

17   all claims "that are or may be based in whole or part on any act, omission, transaction, event, or

18   other circumstance taking place or existing on or prior to the Effective Date (including prior to the

19   Petition Date)" that are related to, among other things, "the purchase or sale of any securities

20   issued by the Debtor" or "the formation of, investigation by or other actions taken by, or on behalf

21   of, the Special Committee to the present."  Confirmation Order, ¶ 18; Plan, Article 11.1(c).  The

22   only carve-out excludes claims for willful misconduct or gross negligence, which Plaintiffs have

23   not alleged in their Lawsuit.  Furthermore, the only parties not bound by the release are 1) those

24   that submitted a Ballot rejecting the plan (or abstained from voting on the plan) and also

25   affirmatively elected not to be bound by submitting a Ballot with the appropriate designation; and

26   2) the Lead Plaintiffs in the litigation *In re ShengdaTech, Inc. Securities Litigation*, Case No. 11-

27   cv-1918 (TPG).  It cannot be disputed that Plaintiffs fit into neither of these groups.

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

11

1   All of the events underlying Plaintiffs' claims are "in connection with or related to" the

2   purchase or sale of ShengdaTech debt securities, specifically the company's 2008 and 2010

3   offerings of 6.0% and 6.5% Convertible Senior Notes (the "Notes"). *See* Complaint, ¶¶ 1, 2–10,

4   13–23, 146–149.   Because the Notes are "securities issued by the Debtor," any claims "in

5   connection with or related to" the Notes are covered by the release. *See* Confirmation Order,

6   ¶ 18.  Plaintiffs' claimed damages in the Lawsuit arise ***solely*** from losses they sustained due to

7   ShengdaTech default on the Notes:

8       Defendants' negligence caused substantial harm to the Damaged Funds.  Having
        purchased the Notes at or near par value, the Damaged Funds are now left holding
9       Notes worth only a small fraction of what was paid for them, if indeed they have
        any value at all.

10

11  Complaint, ¶ 69; *see also id.*, ¶¶ 55–56, 141–149.  Plaintiffs' Complaint makes clear that the

12  allegedly negligent misrepresentations made by the Independent Directors upon which Plaintiffs'

13  claims are based are actionable only because they purportedly caused the Notes to decline in

14  value. *See id.* ¶¶ 1, 2–10, 13–23, 55–56, 69, 141–149.

15  Because Plaintiffs' entire case depends on losses allegedly sustained as a result of their

16  purchase of the Notes, the Lawsuit is "in connection with or related to . . . the purchase or sale of

17  any securities issued by the Debtor" and is prohibited by the Plan and Confirmation Order.

18  Confirmation Order, ¶ 18; Plan, Article 11.1(c).   Further, the Complaint includes numerous

19  allegations regarding the Special Committee, including the results of the committee's internal

20  investigation into accounting irregularities at ShengdaTech that precipitated its default on the

21  Notes and subsequent bankruptcy filing.  *See id.* ¶¶ 7, 47, 48–53, 64–67.  The releases also

22  encompass any matters related to "the formation of, investigation by or other actions taken by . . .

23  the Special Committee."   Confirmation Order, ¶ 18; Plan, Article 11.1(c).  In sum, Plaintiffs'

24  claims for negligent misrepresentation are within the scope of the releases in the Confirmation

25  Order and Plan, and are the exact type of claims the release and injunction provisions were

26  intended to prohibit.  Thus, Plaintiffs' Lawsuit violates the injunction and must not proceed

27  further.

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1        2.    The Release Provisions are Valid and Enforceable.

2        The Independent Directors acknowledge that the Ninth Circuit has looked unfavorably

3   upon nonconsensual releases applicable to non-debtors.  However, the release provisions in the

4   Confirmation Order and Plan are consensual, valid, and enforceable under applicable law.

5        Section 524(e) of the Bankruptcy Code provides, in part, that the "discharge of a debt of

6   the debtor does not affect the liability of any other entity, or the property of any other entity for,

7   such debt." 11 U.S.C. § 524(e).  Accordingly, the Ninth Circuit held in *In re Lowenschuss* that

8   section 524(e) precludes confirmation of a plan that contains a broad release of claims against

9   various third parties.  *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394,

10  1401–02 (9th Cir. 1995).  However, subsequent decisions by courts in the Ninth and other

11  Circuits have confirmed that *voluntary* (consensual) third party releases, such as the release at

12  issue here, are permissible and <u>do not</u> implicate the prohibition set forth in section 524(e).  For

13  example, in *In re Pacific Gas and Electric Co.*, the court upheld a release of a claim of a non-

14  debtor to which the releasing party consented.  304 B.R. 395, 418 & n.26 (Bankr. N.D. Cal.

15  2004); *see also Billington v. Winograde (In re Hotel Mt. Lassen, Inc.)*, 207 B.R. 935, 941 & n.7

16  (Bankr. E.D. Cal. 1997) ("Any third-party release in connection with a plan of reorganization, at a

17  minimum, must be fully disclosed and purely voluntary on the part of the releasing parties and

18  cannot unfairly discriminate against others. . . . In the Ninth Circuit and other jurisdictions that

19  prohibit compelled third-party releases, any third-party release associated with a plan of

20  reorganization *draws its vitality from its status as a voluntary contractual agreement between the*

21  *releasing and the released parties*, rather than by virtue of the court's order confirming the plan."

22  (emphasis added)); *In re Station Casinos, Inc.*, No. BK-09-52477, 2011 WL 6012089 (D. Nev.

23  2011) (trial order) (citing *Pacific Gas* and *Hotel Mt. Lassen*) ("A release of non-debtor third

24  parties *voluntarily and knowingly given by a creditor* or equity holder in connection with a

25  chapter 11 plan does not implicate the concerns regarding third party releases discussed by the

26  Ninth Circuit Court of Appeals in *Lowenschuss*. . . . Here, the *Third Party Release was plainly*

27  *described on the Ballot used to solicit votes in favor of the Plan*. Thus, the Third Party Release

28  *does not violate Section 524(e) or any of the concerns discussed in* Lowenschuss and is an

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1   appropriate term of the Plan . . . ." (emphasis added)).  And in *In re South Edge LLC*, the Nevada

2   District Court, acknowledging the Ninth Circuit's holding in *Lowenschuss*, clarified that the court

3   must reject plan provisions "which purport[] to release third parties from liability *to a*

4   *nonconsenting nondebtor.*" *Meritage Homes of Nevada, Inc. v. JPMorgan Chase Bank, N.A. (In*

5   *re South Edge LLC)*, 478 B.R. 403, 414 (D. Nev. 2012) (emphasis added); *see also id.* at 416

6   ("The [third party release at issue] therefore does not violate the Ninth Circuit's prohibition on

7   nonconsensual third party releases through plan confirmation.").  In sum, while a third party

8   release cannot be forced upon non-consenting creditors as part of a plan of reorganization, the

9   consensual release at issue here is valid and enforceable.

10          Moreover, the release language in the Plan and Confirmation Order is carefully tailored to

11  the circumstances, limited, and was conspicuously highlighted for all parties in interest as part of

12  the approval process.  All creditors and equity holders received extensive notice regarding the

13  provisions of the Plan, including the releases in Article 11.1(c) of the Plan and Paragraph 18 of

14  the Confirmation Order.  The release was clearly highlighted in the Plan, Disclosure Statement,

15  Non-Voting Notice, and Ballots, as well as the Letter of Support sent by the Committee—two

16  members of which were Plaintiffs AG OFCON and Zazove—urging unsecured creditors to vote

17  for the plan.[3]  The creditors and shareholders entitled to vote on the Plan were informed of the

18  release and given the opportunity to opt out of the release on the Ballot included in their

19  solicitation materials.  The Ballots sent to Holders of Claims and Equity Interests in Classes 3, 4,

20  5, and 6—including the Plaintiffs—clearly provided that any Holder of a Claim or Equity Interest

21  who votes to reject the Plan or abstains from voting and affirmatively opts out of the release on its

22  Ballot is not bound by the release.  In casting the Ballot in favor of the Plan, each creditor and

23  shareholder was informed that by voting in favor of the Plan, they would be bound to the release.

24  And in failing to "check the box" to opt out of the release, each creditor and shareholder who

25  rejected the Plan or abstained from voting was informed that they would be bound to the release.

26  _____

27  [3] As stated in detail in section II.A, *supra*, Plaintiffs AG OFCON and Zazove were in fact participating members of the Committee and urged other unsecured creditors to approve the Plan,

28  including the very release and injunction provisions they now violate.

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1    Further, both voting and non-voting creditors had the opportunity to object to the release, and yet

2    the only objection raised was by Lead Plaintiffs in the Class Action. Plaintiffs did not join in that

3    objection.[4] In sum, the release was conspicuously highlighted to creditors and shareholders in the

4    Plan, Disclosure Statement, Non-Voting Notice, Ballots and Letter of Support, and because

5    creditors—including the Plaintiffs—did not exercise their right to opt-out or raise any objections,

6    such releases are consensual.

7         The release is limited in scope and the carve-outs therefrom maintain significant rights for

8    creditors. Specifically, the release only applies to the debtor, the committee, certain parties

9    directly involved in the Chapter 11 Case, and the Special Committee and Independent Directors

10   (including the Independent Directors). Parties holding potential claims against the Special

11   Committee or the Independent Directors have had a significant amount of time to assert such

12   claims. Certain of ShengdaTech's former note holders have pursued claims against

13   ShengdaTech's former auditors and underwriters rather than the Special Committee or

14   Independent Directors, and Lead Plaintiffs in the Class Action[5] have negotiated a carve-out from

15   the release to protects their rights to continue to prosecute their claims within the Class Action.

16   Finally, and in compliance with applicable law, the release in the Plan and Confirmation Order

17   carves out any actions against the Released Parties for conduct that amounts to willful misconduct

18   or gross negligence.

19        The Independent Directors have been integral to ShengdaTech's reorganization efforts by,

20   among other things: (a) serving as responsible persons under Nevada law; (b) overseeing the

21   Special Committee's investigation into the prepetition financial irregularities; (c) cooperating

22   fully with the SEC investigation; and (d) actively supporting the Chapter 11 Case and the efforts

23   to achieve the best possible recovery for ShengdaTech's Creditors. For these reasons, this Court

24   ────────────────
     [4] *See In re ShengdaTech, Inc. Sec. Litig.*, Case No. 11-cv-1918 (TPG) (S.D.N.Y.). These
25   objections were resolved via modifications to the Plan or language in the proposed findings of
     fact and conclusions of law relating to confirmation of the plan in August 2012. *See*
26   Memorandum of Law in Support of Confirmation of First Amended Chapter 11 Plan of
     Reorganization, As Modified [Docket No. 616], at 26–27 & n.19.
27
     [5] *See In re ShengdaTech, Inc. Sec. Litig.*, Case No. 11-CV-1918 (TPG); Confirmation Order, ¶ 21.
28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1    determined that the release is appropriate in scope, valid, and enforceable, as confirmed by its

2    issuance of the Confirmation Order and its Findings of Fact regarding same.[6] *See* Confirmation

3    Order, ¶ 5; Findings of Fact, ¶ I.

4                    3.    <u>Plaintiffs are Barred by Res Judicata from Challenging the Release.</u>

5            For the reasons set forth above, the release in Article 11.1(c) is valid and enforceable

6    under applicable law, and the Independent Directors expressly deny that it is in any way

7    improper.  But even if Article 11.1(c) were invalid under applicable law, any effort by Plaintiffs

8    to challenge collaterally the Court's confirmation of the Plan is barred by the doctrine of res

9    judicata. *See Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142–43 (9th Cir.

10   2002); *see also Brawders v. County of Ventura (In re Brawders)*, 503 F.3d 856, 867 (9th Cir.

11   2007); *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995); *Carolco Television Inc. v. Nat'l*

12   *Boradcasting Co. (In re De Laurentiis Entm't Grp. Inc.)*, 963 F.2d 1269, 1275 (9th Cir. 1992) (". .

13   . a plan of reorganization is binding on creditors even if it is legally erroneous.").  A bankruptcy

14   plan binds all parties once it is confirmed, and "all questions that could have been raised

15   pertaining to the plan are entitled to res judicata effect . . . ." *Stratosphere*, 298 F.3d at 1143

16   (quoting *Trulis*, 107 F.3d at 691).  This protection is absolute "even if the plan contained illegal

17   provisions."  *Id.* at 1143; *see also Republic Supply v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987)

18   (holding that that res judicata barred a later challenge to a third party release in a confirmed and

19   unappealed Chapter 11 plan while assuming without deciding that the release was precluded by

20   section 524(e)).  Therefore, the validity of the release is irrelevant because Plaintiffs—having

21   voted in favor of the Plan, never objected to confirmation, and never appealed the Confirmation

22   Order—are now barred from challenging any provisions in the Plan.

23

24

25   ───────────────
[6] Third party releases similar to the release in the Plan and Confirmation Order have been
26   approved in other cases before this Court.  *See, e.g.*, *In re Stations Casino*, Case No. 09-52477
     (GWZ) (Bankr. D. Nev. May 25, 2011); *In re Zante, Inc.*, Case No. 09-50746 (GWZ) (Bankr. D.
27   Nev. July 22, 2009); *In re 360 Viansa, LLC*, Case No. 07-50205 (GWZ) (Bankr. D. Nev. Oct. 26,
     2007).
28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1    **B.    The Independent Directors Are Entitled to their Costs and Attorneys' Fees.**

2          Pursuant to the Confirmation Order and Plan, any entity[7] injured by a willful violation of

3    the injunction contained therein shall recover its damages, including costs and attorneys' fees.

4    The Plan and Confirmation Order contain virtually identical provisions stating as follows:

5          **Any Entity injured by any <u>willful violation</u> of the injunctions provided for in
          Articles <u>11.1(e) and 11.2</u> [of the Plan] <u>shall recover</u> actual damages, including,**

6          **but not limited to, <u>costs and attorneys' fees</u> and expenses,** and, in appropriate
          circumstances, may recover punitive damages from the willful violation . . . .

7

8    Plan Article 11.2 (emphasis added); Confirmation Order, ¶ 16.

9          In bringing their Lawsuit with full knowledge of the injunction and refusing to comply

10    with the Independent Directors' request that they dismiss the Lawsuit voluntarily, Plaintiffs

11    willfully violated Articles 11.1(e) and 11.2 of the Plan as well as Paragraph 16 of the

12    Confirmation Order. "Willful" in this context requires neither bad faith nor a subjective intent to

13    violate the injunction. Rather, Plaintiffs must simply have known the injunction was applicable

14    and intended actions which violated the injunction. *See Nash v. Clark County Dist. Attorney's*

15    *Office (In re Nash)*, 464 B.R. 874, 880 (B.A.P. 9th Cir. 2012) (citing *Espinosa v. United Student*

16    *Aid Funds, Inc.*, 553 F.3d 1193, 1205 & n.7 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010)) ("To

17    prove that a sanctionable violation of the discharge injunction has occurred, the debtor must show

18    that the creditor: '(1) knew the discharge injunction was applicable and (2) intended the actions

19    which violated the injunction.'"); *Morris v. Peralta (In re Peralta)*, 317 B.R. 381, 389 (B.A.P. 9th

20    Cir. 2004) ("It is settled that the 'willfulness test' for automatic stay violations merely requires

21    that: (1) the creditor know of the automatic stay; and (2) the actions that violate the stay be

22    intentional. No specific intent is required; a good faith belief that the stay is not being violated 'is

23    not relevant to whether the act was willful . . . .'").

24    / / /

25

26    _____

27    [7] The Independent Directors are "entities" for purposes of the injunction provision. *See* Plan
      Article 1.15; 28 U.S.C. § 101(15) ("The term 'entity' includes person, estate, trust, governmental
      unit, and United States trustee.").

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1    This standard is easily met here. Plaintiffs filed their Lawsuit against the Independent

2    Directors (an intentional act) with full knowledge of the release and injunction provisions in the

3    Plan and Confirmation Order. For the reasons outlined above, the release on its face encompasses

4    Plaintiffs' claim for negligent misrepresentation against the Independent Directors.[8]  It defies

5    logic to think that Plaintiffs were unaware of the scope of the release given that they were

6    involved in the process of negotiating the plan, voted to approve the plan and be bound by the

7    release and injunction, and did not join in the objection that was filed by the Lead Plaintiffs in the

8    Class Action regarding the scope of those provisions. Plaintiffs' knowledge of the release and

9    injunction is further evidenced by the fact that Plaintiffs AG OFCON and Zazove were members

10   of the Committee which urged unsecured creditors to vote to approve the Plan and *specifically*

11   *recommended that they closely review Article 11* prior to voting. *See* Letter in Support. Thus,

12   Plaintiffs' violation of the injunctions provided for in Articles 11.1(e) and 11.2 of the Plan was

13   willful. Accordingly, the Independent Directors "shall recover" their costs and attorneys' fees

14   incurred in litigating the state court action.

15   **IV.    CONCLUSION**

16   Plaintiffs were not only aware of the release and injunction provisions in the Plan and

17   Confirmation Order—they affirmatively chose to support the Plan and to be bound by the release.

18   Yet Plaintiffs have refused, despite the Independent Directors' request, to dismiss claims which

19   are covered by the release. The release is valid and enforceable under applicable law, and in any

20   event Plaintiffs are barred by res judicata from challenging the propriety of the release or any

21   other provision approved by this Court. For the reasons set forth in this Motion, the Independent

22   Directors respectfully request that the Court: (i) enter an order enforcing the release and

23   injunction provisions contained in the Plan and Confirmation Order and enjoining Plaintiffs from

24   proceeding further with their Lawsuit against the Independent Directors; (ii) award the

25   Independent Directors their costs and fees incurred in enforcing the release and injunction and

26

27

28   _____
     [8] *See* section III.A.1, *supra*.

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1    incurred in litigating the state court action; and (iii) grant such other relief, whether at law or in

2    equity, as the Court may deem just and proper.

3           DATED this 11th day of February, 2014.

4

5                          PISANELLI BICE PLLC

6                          By:_____

7                          James J. Pisanelli, Esq., #4027

8                          Christopher R. Miltenberger, Esq., #10153
                      3883 Howard Hughes Parkway, Suite 800

9                          Las Vegas, Nevada 89169

10

11                         and

12                         Louis R. Strubeck
                      Stephen M. Dollar

13                         FULBRIGHT & JAWORSKI LLP
                      2200 Ross Avenue, Suite 2800

14                         Dallas, Texas 75201-2784

15                         *Attorneys for A. Carl Mudd and Sheldon B. Saidman*

16

17

18

19

20

21

22

23

24

25

26

27

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169