NANCY A. PETERMAN, ESQ.
Illinois Bar No. 6208120
(*pro hac vice pending*)
MIMI BAHCALL, ESQ.
Illinois Bar No. 6191823
(*pro hac vice pending*)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois  60601
Telephone:  312-456-8400
Facsimile:   312-456-8435
Email:  petermann@gtlaw.com
Email:  bahcallm@gtlaw.com

KARA B. HENDRICKS, ESQ.
Nevada Bar No. 7743
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone:  702-792-3773
Facsimile:   702-792-9002
Email: hendricksk@gtlaw.com

Electronically Filed November 13, 2014

*Counsel for the ShengdaTech Liquidating Trust*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br><br>SHENGDATECH, INC.,<br><br>Debtor. | Case No. BK-11-52649-BTB<br>Chapter 11<br><br>**SHENGDATECH LIQUIDATING TRUST'S MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT ALLOWING CLASS 4 PROOF OF CLAIM PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**<br><br>**Re: Docket No. 878** |

The ShengdaTech Liquidating Trust (the "ShengdaTech Liquidating Trust" or the "Trust") submits this motion for entry of an Order approving a settlement allowing the Class 4 Proof of Claim (as defined below), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedures (the "Motion").  The Motion is made and based on Rule 9019 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), the declaration of Michael D. Kang in support

*CHI 65357114v4 999931.998156*

of the Motion, any other related papers and pleadings on file herein, and any argument of counsel presented at any hearing held with respect to this Motion.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue of the Debtor's chapter 11 case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Bankruptcy Rule 9019 governs this Motion.

## II. FACTS

4. On August 19, 2011 (the "Petition Date"), ShengdaTech, Inc. ("ShengdaTech" or the "Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended, in the United States Bankruptcy Court for the District of Nevada.

5. On October 2, 2012, the Bankruptcy Court entered findings of fact and conclusions of law regarding confirmation of the First Amended Chapter 11 Plan of Reorganization of ShengdaTech, as subsequently amended (the "Plan") [D.I. 654] and entered an order confirming the Plan (the "Confirmation Order") [D.I. 655]. The Effective Date of the Plan occurred on October 17, 2012 [D.I. 680]. In accordance with the Plan, the ShengdaTech Liquidating Trust was established on the Effective Date and Michael Kang became the Trustee of the ShengdaTech Liquidating Trust (the "ShengdaTech Liquidating Trustee").

6. Section 8.1 of the Plan provides the ShengdaTech Liquidating Trustee with "exclusive authority to file objections to, and to settle, compromise, withdraw or litigate to judgment in the Bankruptcy Court, or such other court having competent jurisdiction, objections to any and all Disputed Claims without approval of the Bankruptcy Court or notice to any party."

7. Under the circumstances of this case, including the recently filed Adversary Proceeding (as defined below), and in the interests of full disclosure, the ShengdaTech Liquidating Trust has filed this Motion, while it may not be necessary based upon the express language of the Plan. In addition, this Motion provides the Court with details of a settlement that

2

will resolve a pending objection to the Class 4 Proof of Claim set for hearing before the Court on December 4, 2014 and is relevant to the upcoming hearing on the pending request for a Preliminary Injunction (as defined below) in connection with the Adversary Proceeding on November 14, 2014.

### A. The Class 4 Proof of Claim

8. On December 19, 2011, ShengdaTech and the Official Committee of Unsecured Creditors of the Debtor entered into a stipulation that provisionally allowed a class proof of claim on behalf of certain purchasers of the 6.0% Notes due 2018 and 6.5% Notes due 2015 offered for sale by ShengdaTech on May 22, 2008 and December 10, 2010, respectively (collectively, the "Notes"), for any and all claims that they held against ShengdaTech or its estate under securities or other law related to the offer, sale and purchase of such Notes (the "Class 4 Proof of Claim") [D.I. 283].

9. The Class 4 Proof of Claim was deemed to be a timely filed proof of claim on behalf of individual holders and purchasers of the Notes with respect to "all claims against the Debtor's estate, under securities or other law related to the offer, sale and purchase of the Notes." Class 4 Proof of Claim, ¶¶ H & 1. The Class 4 Proof of Claim was "provisionally allowed against the Debtor's estate … without any further need for the filing of proofs of claim by individual holders of [Class 4] Claims." *Id.*, ¶ 1. The Class 4 Proof of Claim remained subject to objection on any grounds other than the timeliness of its filing. *Id.*

10. Based upon the Plan, Class 4 consists of all "Noteholders' Securities Claims," which are defined under the Plan as "any Claim asserted by the purchasers of the Notes or the current holders of the Notes that arise from the rescission of a purchase or sale of a security of the Debtor or of an Affiliate of the Debtor, for damages arising form the purchase or sale of such a security, or for reimbursement or contribution Allowed under section 502 of the bankruptcy Code on account of such Claim." Plan, § 1.78. At the time of confirmation of the Plan, this Class 4 Proof of Claim constituted a provisionally allowed claim falling within Class 4 of the Plan and was the reason that Class 4 existed under the Plan.

3

11. Based upon the Plan, the ShengdaTech Liquidating Trust had up to 180 days after the Effective Date to object to all proofs of claim. Therefore, in order to comply with this requirement, on February 26, 2013, the ShengdaTech Liquidating Trust filed an Objection to the Class 4 Proof of Claim (the "Initial Objection") [D.I. 750] and requested that the hearing on the Initial Objection be continued to a later date to be re-noticed by the ShengdaTech Liquidating Trust or any other appropriate party. In the Initial Objection, the ShengdaTech Liquidating Trust only objected to the Class 4 Proof of Claim on the basis that it was a "contingent, unliquidated and/or disputed" claim. Stating that it had filed the Initial Objection to comply with the claim objection deadline under the Plan, the ShengdaTech Liquidating Trust continued the hearing on the Initial Objection and reserved its rights to supplement the Initial Objection, at a later date, as appropriate. Initial Objection, at ¶ 20.

12. On April 1, 2013, this Court entered an Order continuing the hearing on the Initial Objection to a later date upon due and proper notice by the ShengdaTech Liquidating Trust or any holder of the Class 4 Proof of Claim. [D.I. 766]. This Order also provided that the ShengdaTech Liquidating Trust reserved all rights to amend the Initial Objection in connection with any continued hearing on the Initial Objection, and, likewise, that any holder of the Class 4 Proof of Claim reserved any and all rights to file a response to the Initial Objection or any amended objection in connection with any continued hearing on the Initial Objection. *Id*.

13. Pursuant to the Court's April 1, 2013 order, on October 15, 2014, certain holders of the Class 4 Proof of Claim (the "Note Purchasers") filed a Request for Allowance of Claims and Response to Objection of the ShengdaTech Liquidating Trustee to the Allowance of Such Claims (the "Request for Allowance") [D.I. 878], seeking an order allowing the Class 4 Proof of Claim in the aggregate amount of at least $75,356,783.

**B. The Insurance Policies**

14. Prior to its bankruptcy, ShengdaTech maintained three insurance policies from three different carriers: (i) Zurich American Insurance Company ("Zurich"), that provided for $5 million of insurance coverage (the "Zurich Policy"), (ii) Federal Insurance Company, a member of the Chubb Group of Insurance companies ("Federal"), that provided for $5 million of

4

*CHI 65357114v4 999931.998156*

insurance coverage (the "Federal Policy"), and (iii) Ironshore Indemnity, Inc. ("Ironshore," together with Zurich and Federal, the "Insurance Carriers"), that provided for $10 million of insurance coverage (the "Ironshore Policy," together with the Zurich Policy and the Federal Policy, the "Insurance Policies"). The ShengdaTech Liquidating Trust believes that these Insurance Policies would cover any allowed Class 4 Proof of Claim.

15. On August 14, 2012, this Court entered an Order pursuant to Bankruptcy Rule 9019 approving a settlement relating to the Zurich Policy, whereby Zurich paid approximately $3.75 to the estate to settle matters relating to the Zurich Policy. Subsequent to that settlement, the ShengdaTech Liquidating Trust has paid out Losses (as defined under the Insurance Policies) totaling approximately $1.25 million to exhaust the Zurich Policy.

16. Earlier this year, after the Zurich Policy was exhausted and after Federal had begun paying defense costs to the ShengdaTech Liquidating Trust and the former independent directors of ShengdaTech, the ShengdaTech Liquidating Trust engaged in discussions with Federal, the first layer of excess insurance coverage, regarding a possible mediation involving Federal, Ironshore, the ShengdaTech Liquidating Trust, the former independent directors of ShengdaTech and all persons with potentially covered claims under the Insurance Policies.

17. A mediation occurred on September 29 and 30, 2014 in New York City, but such mediation was unsuccessful in reaching a global resolution among all interested parties.

18. At the time of that mediation, the Trust was informed for the first time that there was only approximately $2 million of insurance coverage remaining under the Federal Policy. Given that the Trust had approximately $465,000 of fees paid or pending against the Federal Policy as of the mediation, presumably the balance (approximately $2.5 million) was paid, or to be paid, to cover defense costs for the former independent board members (which would bring their total defense costs to approximately $4.35 million based on amounts paid by Zurich (approximately $1.1 million), the Trust (approximately $750,000) and presumably Federal (approximately $2.5 million)).

19. Subsequent to that mediation, on or about October 7, 2014, the ShengdaTech Liquidating Trust was further surprised when the mediator informed the Trust that he had

5

subsequently facilitated a settlement between the plaintiffs in that certain action captioned, *Miller Investment Trust et al.* (the "Miller Trust Plaintiffs") *v. Xiangzhi Chen et al.*, Case No. 1:12-cv-04997-LGS (S.D.N.Y.) (the "Miller Action"), Federal, Ironshore and the Debtor's former independent directors to the exclusion of, and with no effort to involve, the ShengdaTech Liquidating Trust, who has potential covered claims against the Insurance Polices, and all other noteholders and equity holders of ShengdaTech, who likewise have potential covered claims against those Insurance Policies. Based upon this settlement, the Miller Trust Plaintiffs would receive $2.4 million of the remaining insurance coverage, which is a significant recovery in comparison to their estimated exposure of $8 million, and would exhaust the one insurance policy, the Federal Policy, which covers claims against ShengdaTech, such as the Class 4 Proof of Claim.

20. Because of the proposed settlement with the plaintiffs in the Miller Action, on October 14, 2014, the Note Purchasers filed a complaint [Adv. Proc. No. 14-05054, D.I. 1] seeking declaratory relief: (i) to determine the extent of the insurance coverage available under the Ironshore Policy, (ii) to determine that the Ironshore Policy and its proceeds are an asset of the ShengdaTech Liquidating Trust, (iii) to determine that the Federal Policy and its proceeds are an asset of the ShengdaTech Liquidating Trust, (iv) to enjoin the Miller Parties from settling with the Insurance Carriers (given that the proceeds are property of the estate and the confirmation injunction prohibits use of such policies absent order of this Court), and (v) for other relief requested therein (the "Adversary Proceeding"). The Note Purchasers also requested a preliminary injunction or a temporary restraining order in connection with that litigation (the "Preliminary Injunction").

21. The ShengdaTech Liquidating Trust has filed a motion to intervene in the Adversary Proceeding and join in the request for a Preliminary Injunction.

### III. THE TERMS OF THE SETTLEMENT

22. The ShengdaTech Liquidating Trust and the Note Purchasers have agreed to resolve the Request for Allowance as follows:

a.  The Class 4 Proof of Claim shall be allowed in the amount of $50,000,000.00 (the "Allowed Class 4 Claim");

b.  The holders of the Allowed Class 4 Claim shall consist of all purchasers of the Notes on or prior to March 15, 2011 and who either (i) sold such notes subsequent to March 15, 2011 or (ii) hold such Notes (collectively, the "Class 4 Claimholders");

c.  Mutual releases by (i) Class 4 Claimholders (in their capacity as such) and (ii) each and all of the ShengdaTech Liquidating Trust, the ShengdaTech Liquidating Trustee, the members of the ShengdaTech Liquidating Trust Advisory Board, and the ShengdaTech Liquidating Trust's professionals (each in their capacity as such) for any and all claims and causes of action related to post-Effective Date activities of the ShengdaTech Liquidating Trust, *provided, however,* that such release shall not apply to any Class 3 Claims held by Class 4 Claimholders under the Plan.

d.  To the extent that the Insurance Carriers pay any amounts on account of the Allowed Class 4 Claim, all such insurance proceeds shall be distributed on a pro rata basis to all Class 4 Claimholders, net of costs and expenses to be agreed to by Grant & Eisenhofer and the Trust (the "Shared Recovery"); *provided, however*, to the extent the Bankruptcy Court permits the Miller Trust Plaintiffs to proceed with their pending settlement, pursue their own actions against insurance proceeds or the Miller Trust Plaintiffs otherwise negotiate their own settlement with the Insurance Carriers, then they shall not participate with the other Class 4 Claimholders in the Shared Recovery;

e.  Upon the mutual agreement of the Note Purchasers, through their counsel Grant & Eisenhofer P.A. ("G&E"), and the ShengdaTech Liquidating Trust, the ShengdaTech Liquidating Trust will either (i) retain G&E as its counsel to pursue collection of the Shared Recovery on behalf of the Class 4 Claimholders or (ii) confer and assign the right to collect the Allowed Class

7

        4 Claim from the Debtor's insurance policies (including the Insurance Policies) should such standing be necessary to ensure the Debtor's insurance policies (including the Insurance Policies) are preserved;

    f.    To the extent that the ShengdaTech Liquidating Trust (or its Disbursement Agent) makes distributions of the Shared Recovery, the cost of such distribution shall be paid from any such Shared Recovery first (before distributions are made to the Class 4 Claimholders) and the ShengdaTech Liquidating Trust (or such other Disbursement Agent, as applicable) shall not be paid from any other asset of the ShengdaTech Liquidating Trust; and

    g.    Any and all rights, if any, of any other persons to pursue the Allowed Class 4 Claim, the Class 4 Claim or the rights under this Court's April 1, 2013 Order relating to the Initial Objection [Docket No. 716] shall be deemed extinguished by this settlement and no other Class 4 Claims, under the Plan, shall be allowed.

23.    The ShengdaTech Liquidating Trust has investigated, considered and analyzed the facts and legal authorities surrounding the Class 4 Proof of Claim, including, without limitation, any potential defenses to such Class 4 Proof of Claim, the ability of the holders of the Class 4 Proof of Claim to establish damages and the ShengdaTech Liquidating Trust's current financial status and its ongoing financial obligations in China. Based upon this analysis and for the reasons set forth herein, the ShengdaTech Liquidating Trust determined that it was in the best interests of the beneficiaries of the ShengdaTech Liquidating Trust to settle the Request for Allowance on the terms set forth above.

24.    Prior to entering into any such settlement, the ShengdaTech Liquidating Trust notified Federal, one of its Insurance Carriers, that it intended to pursue a possible settlement of the Request for Allowance and set forth the basic parameters of the possible settlement. Federal advised the ShengdaTech Liquidating Trust that it would consider the settlement and get back to the Trust. To date, Federal has not informed the ShengdaTech Liquidating Trust of its position as to the proposed settlement of the Class 4 Proof of Claim. Under the Federal Policy, the Trust

8

is not authorized to settle any Claim without Federal's written consent, which shall not be unreasonably withheld. Given the Trust's financial condition, given the Trust's views of its defenses to the Class 4 Proof of Claim and given that this settlement will not impact Federal's ability to dispute coverage, Federal should not withhold its consent, other than for litigation purposes. As this Court knows, Ironshore disputes that the Ironshore Policy would cover any claims against ShengdaTech, including the Class 4 Proof of Claim. Therefore, any request for consent from Ironshore would be futile. For these reasons, the ShengdaTech Liquidating Trust believes that it has complied with and met its obligations to defend under the Insurance Policies and/or any other insurance policies for which a claim may be made by the ShengdaTech Liquidating Trust on behalf of the Debtor's estate.

### IV.    REQUEST FOR RELIEF

25.    By this Motion, the ShengdaTech Liquidating Trust respectfully requests entry of an order substantially in the form of the proposed order attached hereto as Exhibit A, pursuant to Bankruptcy Rule 9019 to approve the settlement described in Paragraph 22.

26.    Rule 9019 of the Federal Rules of Bankruptcy Procedure governs the procedural requirements to be followed before a settlement may be approved. It provides, in relevant part: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *See In re Protective Comm. For Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) ("in administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.").

27.    For a compromise to be approved, the proposed compromise must be fair and equitable. *Anderson*, 390 U.S. at 424. The Ninth Circuit enunciated the following factors for consideration when considering whether a proposed settlement agreement is reasonable, fair and equitable: (i) the probability of success in the litigation, (ii) the likely difficulties in collection, (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (iv) the paramount interest of the creditors. *Martin v. Kane (In re*

9

*A&C Prop.)*, 784 F.2d 1377, 1381-82 (9th Cir. 1986), *cert. denied,* 479 U.S. 854 (1986). Consideration of these factors does not require courts to decide ultimate questions of law and fact raised in the controversies sought to be settled, or to determine whether the settlement presented is the best one that could possibly have been achieved. Rather, the court need only canvass the issues to determine whether the settlement falls "below the *lowest point in the zone of reasonableness.*" *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972) (emphasis added)*, cert. denied sub nom.*, *Benson v. Newman*, 409 U.S. 1039 (1972). It is well established that compromises are favored in bankruptcy." *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990). Finally, each of the *A&C Properties* factors need not be satisfied so long as the factors as a whole favor the court's approval of the settlement. *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

28. The Ninth Circuit has long recognized that "the bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re A&C Prop.*, 784 F.2d at 1380-81. Accordingly, in approving a settlement agreement, courts need not conduct either an exhaustive investigation into the validity or a mini-trial on the merits of the claims sought to be compromised. *U.S. v. Alaska Nat. Bank (In re Walsh Constr., Inc.)*, 699 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the court finds that the settlement was negotiated in good faith and is reasonable, fair and equitable. *In re A&C Prop.*, 784 F.2d at 1381.

### V. BASIS FOR APPROVING PROPOSED SETTLEMENT

29. In view of the criteria enumerated by the Ninth Circuit in *A&C Prop.*, the ShengdaTech Liquidating Trust submits that the proposed compromise is fair, reasonable and in the best interests of the ShengdaTech Liquidating Trust, the beneficiaries of the ShengdaTech Litigation Trust, and the Debtor's estate.

30. ***First***, the proposed compromise is fair and reasonable in light of the probability of success in the litigation. Here, the ShengdaTech Liquidating Trust would have to defend the

Class 4 Proof of Claim that asserts claims, under securities or other laws, related to the offer, sale and purchase of the Notes. Based upon the publicly reported information concerning the financial irregularities at ShengdaTech and the report of the Special Committee of the Board of Directors of ShengdaTech, the ShengdaTech Liquidating Trust likely would have difficulty pursuing an objection to the Class 4 Proof of Claim and the outcome of such objection is uncertain.

31. *Second,* the proposed compromise is fair and reasonable in light of the difficulties in collection. While the ShengdaTech Liquidating Trust is not pursuing litigation to recover any monies, it does, as a fiduciary to the beneficiaries of the ShengdaTech Liquidating Trust, consider the ability of the beneficiaries to collect their claims from sources other than the Trust and how the Trust might impact those recoveries. Based upon the information known to the ShengdaTech Liquidating Trust today, the only source of recovery for those holders of the Class 4 Proof of Claim is the Insurance Policies. The Insurance Policies are being rapidly depleted by defense costs incurred by both the ShengdaTech Liquidating Trust and, in particular, ShengdaTech's former independent directors. In addition, to the extent that the ShengdaTech Liquidating Trust incurs legal fees in defending the Class 4 Proof of Claim, those fees may further deplete the Insurance Policies. As part of the settlement, the ShengdaTech Liquidating Trust will allow the Class 4 Claimholders the ability to pursue collection of the Allowed Class 4 Claim against the Insurance Policies. While the Insurance Carriers likely will raise defenses to coverage of the Allowed Class 4 Claim, the economic beneficiaries, the Class 4 Claimholders, will be the ones fighting this coverage dispute, as opposed to the Trust.

32. *Third,* the proposed compromise is fair and reasonable in light of the potential delay and expense that could result from litigation of such issues. The ShengdaTech Liquidating Trust has a finite amount of money available to it. Presently, the Trust is expending significant resources in connection with the recent takeover of a factory in China. The Trust is doing everything possible to conserve its assets to attempt to generate recoveries in China. Expending limited Trust resources defending the Class 4 Proof of Claim, which defense will be difficult and, the outcome of which is uncertain, is not in the interests of the beneficiaries of the Trust.

11

33. **Fourth**, the proposed compromise is the product of good faith, arms' length negotiations, and reflects the parties' assessments of the strengths and weakness of their respective positions. All of the parties acted in good faith and without any collusion and the compromise reflects the parties' respective assessments of the complexity of the issues and fair and equitable results. Accordingly, in light of the general policy in favor of settlements, the Court should approve the compromise.

34. **Finally**, the proposed compromise is in the best interests or paramount interests of all beneficiaries of the ShengdaTech Liquidating Trust. As noted above, it allows the Trust to focus its limited resources on its efforts in China. In addition, the settlement provides for the disallowance of $25,356,783, or 33.6% of the Class 4 Claims held by the Note Purchasers assertable against the ShengdaTech Liquidating Trust's assets, without the need for protracted litigation. From the Trust's perspective, it believes that it is reducing the Class 4 Proof of Claim by as much as $100 million. Moreover, the Trust has obtained the agreement of the Note Purchasers, as part of this settlement, that the Class 4 Proof of Claim is allowed for all holders of the Class 4 Proof of Claim, other than possibly the Miller Trust Plaintiffs, and not just allowed for the Note Purchasers. In addition, the Trust notes that if the Miller Trust Plaintiffs are, for example, allowed to consummate the $2.4 million settlement, they will be receiving approximately a 30% recovery on account of the Notes that they previously held. To provide them with a further recovery on account of the Allowed Class 4 Claim would be inequitable and they would receive a windfall in comparison to other Class 4 Claimholders.

35. In sum, the ShengdaTech Liquidating Trustee believes that the proposed settlement is fair and reasonable and meets the requirements under the Ninth Circuit's *A&C Prop*. standard. Accordingly, the ShengdaTech Liquidating Trustee respectfully requests that this Court enter an order approving the settlement, substantially in the form of Exhibit A, attached hereto.

12

## IV.

## CONCLUSION

For the reasons set forth above, the ShengdaTech Liquidating Trust respectfully requests that the Court (i) enter an order in substantially the form of order attached hereto as Exhibit A, and (ii) grant such other and further relief as is just and appropriate under the circumstances.

Dated: November 13, 2014

Respectfully submitted by:

*/s/ Kara B. Hendricks*
NANCY A. PETERMAN, ESQ.
Illinois Bar No. 6208120
*(pro hac vice pending)*
MIRIAM G. BAHCALL
Illinois Bar No. 6191823
*(pro hac vice pending)*
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois  60601
Telephone:  312-456-8400
Facsimile:   312-456-8435
Email:  petermann@gtlaw.com
Email:  bahcallm@gtlaw.com

and

KARA B. HENDRICKS, ESQ.
Nevada Bar No. 7743
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone:  702-792-3773
Facsimile:   702-792-9002
Email: hendricksk@gtlaw.com

*Counsel for the ShengdaTech Liquidating Trust*

13

*CHI 65357114v4 999931.998156*

**EXHIBIT A**

**Proposed Order**

14

*CHI 65357114v4 999931.998156*

NANCY A. PETERMAN, ESQ.
Illinois Bar No. 6208120
*(pro hac vice pending)*
MIRIAM G. BAHCALL
Illinois Bar No. 6191823
*(pro hac vice pending)*
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: 312-456-8400
Facsimile: 312-456-8435
Email: petermann@gtlaw.com
Email: bahcallm@gtlaw.com
*Counsel for the ShengdaTech Liquidating Trust*

KARA B. HENDRICKS, ESQ.
Nevada Bar No. 7743
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: 702-792-3773
Facsimile: 702-792-9002
Email: hendricksk@gtlaw.com

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br><br>SHENGDATECH, INC.,<br><br>Debtor. | Case No. BK-11-52649-BTB<br>Chapter 11<br><br>**ORDER APPROVING SETTLEMENT ALLOWING CLASS 4 PROOF OF CLAIM PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE** |

//

15

*CHI 65357114v4 999931.998156*

Upon the motion (the "<u>Motion</u>")[1] of the ShengdaTech Liquidating Trust (the "<u>Trust</u>") for entry of an Order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedures (the "<u>Bankruptcy Rules</u>"), approving a settlement allowing the Class 4 Proof of Claim; and upon the Declaration of Michael D. Kang filed in support of the Motion (the "<u>Kang Declaration</u>"); and the Court having jurisdiction to consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §1408; and the Court having held a hearing to consider the requested relief (the "<u>Hearing</u>"); and the Trust having provided good and sufficient notice of the Motion; and upon the record of the Hearing and all of the proceedings before the Court, the Court finds and determines that the requested relief is in the best interests of the estate, its creditors, the beneficiaries of the Trust and all parties in interest; and the legal and factual bases set forth in the Motion and Kang Declaration establish just and sufficient cause to grant the requested relief herein;

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

B. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

C. Venue for this Chapter 11 case and proceedings on the Motion is proper in this District pursuant to 28 U.S.C. § 1408.

D. Under the circumstances, the Court concludes that the notice given by the Trust of the Motion and relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with Bankruptcy Rule 2002 and the local rules of the Court, and that no further notice of, or hearing on, the relief sought in the Motion and the relief granted herein is necessary or required.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

16

*CHI 65357114v4 999931.998156*

E. The Trust has demonstrated that the settlement described in the Motion and set forth herein is fair and reasonable under Bankruptcy Rule 9019(a) and that the relief sought in the Motion is in the best interest of the estate, its creditors, the beneficiaries of the Trust and other parties in interest.

Based on the foregoing, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED THAT**:

1. The Motion is granted.

2. The Class 4 Proof of Claim shall be allowed in the amount of $50,000,000.00 (the "Allowed Class 4 Claim").

3. The holders on the Allowed Class 4 Claim shall consist of all purchasers of the Notes on or prior to March 15, 2011 and who either (i) sold such notes subsequent to March 15, 2011 or (ii) hold such Notes (collectively, the "Class 4 Claimholders").

4. To the extent that the Insurance Carriers pay any amounts on account of the Allowed Class 4 Claim, all such insurance proceeds shall be distributed on a pro rata basis to all Class 4 Claimholders, net of costs and expenses to be agreed to by Grant & Eisenhofer and the Trust (the "Shared Recovery"); *provided, however*, to the extent the Bankruptcy Court permits the Miller Trust Plaintiffs to proceed with their pending settlement, pursue their own actions against insurance proceeds or the Miller Trust Plaintiffs otherwise negotiate their own settlement with the Insurance Carriers, then they shall not participate with the other Class 4 Claimholders in the Shared Recovery.

5. Upon the mutual agreement of the Note Purchasers, through their counsel Grant & Eisenhofer P.A. ("G&E"), and the ShengdaTech Liquidating Trust, the ShengdaTech Liquidating Trust will either (i) retain G&E as its counsel to pursue collection of the Shared Recovery on behalf of the Class 4 Claimholders or (ii) confer and assign the right to collect the Allowed Class 4 Claim from the Debtor's insurance policies (including the Insurance Policies) should such standing be necessary to ensure the Debtor's insurance policies (including the Insurance Policies) are preserved.

*CHI 65357114v4 999931.998156*

6. To the extent that the ShengdaTech Liquidating Trust (or its Disbursement Agent) makes distributions of the Shared Recovery, the cost of such distribution shall be paid from any such Shared Recovery first (before distributions are made to the Class 4 Claimholders) and the ShengdaTech Liquidating Trust (or such other Disbursement Agent, as applicable) shall not be paid from any other asset of the ShengdaTech Liquidating Trust.

7. Any and all rights, if any, of any other persons to pursue the Allowed Class 4 Claim, the Class 4 Claim or the rights under this Court's April 1, 2013 Order relating to the Initial Objection [Docket No. 716] shall be deemed extinguished by this settlement and no other Class 4 Claims, under the Plan, shall be allowed.

8. Except for the claims, rights and obligations under this Order and under the Plan, in consideration of the mutual agreements and covenants set forth herein, Class 4 Claimholders (in their capacity as such) agree to release and discharge unconditionally each and all of the Liquidating Trust, the Liquidating Trustee, the members of the Liquidating Trust Advisory Board, and the Liquidating Trust's professionals, each in their capacity as such, of and from any and all claims and causes of action whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are related to post-effective date activities of the Liquidating Trust, *provided, however,* that such release shall not apply to any Class 3 Claims held by Class 4 Claimholders under the Plan.

9. Except for the claims, rights and obligations under this Order and under the Plan, in consideration of the mutual agreements and covenants set forth herein, the Liquidating Trust, the Liquidating Trustee, the members of the Liquidating Trust Advisory Board, and the Liquidating Trust's professionals, each in their capacity as such, agree to release and discharge unconditionally each and all of the holders of Class 4 Claims, in their capacity as such, of and from any and all claims and causes of action whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are related to post-effective date activities of the Liquidating Trust.

18

*CHI 65357114v4 999931.998156*

10. The Trust, the ShengdaTech Liquidating Trustee, the Note Purchasers and the Class 4 Claimholders are authorized and directed to carry out all of the terms of this Order and to take all such other or further actions as are necessary or desirable to implement the Order.

11. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Respectfully prepared and submitted by:

*/s/ Kara B. Hendricks*
 NANCY A. PETERMAN, ESQ.
 Illinois Bar No. 6208120
 *(pro hac vice pending)*
 MIRIAM G. BAHCALL
 Illinois Bar No. 6191823
 *(pro hac vice pending)*
 GREENBERG TRAURIG, LLP
 77 West Wacker Drive, Suite 3100
 Chicago, Illinois  60601

and

KARA B. HENDRICKS, ESQ.
Nevada Bar No. 7743
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169

*Counsel for the ShengdaTech Liquidating Trust*

*CHI 65357114v4 999931.998156*

## CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021

In accordance with Local Rule 9021, counsel submitting this document certifies as follows **(check one)**:

☐ The Court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document].

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

*CHI 65357114v4 999931.998156*