KEITH J. SHAPIRO, ESQ.
Illinois Bar No. 6184374
NANCY A. PETERMAN, ESQ.
Illinois Bar No. 6208120
MIRIAM G. BAHCALL
Illinois Bar No. 6191823
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: 312-456-8400
Facsimile: 312-456-8435
Email: shapirok@gtlaw.com
Email: petermann@gtlaw.com
Email: bahcallm@gtlaw.com

KARA B. HENDRICKS, ESQ.
Nevada Bar No. 7743
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: 702-792-3773
Facsimile: 702-792-9002
Email: hendricksk@gtlaw.com

Electronically Filed November 26, 2014

*Counsel for the ShengdaTech Liquidating Trust*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

IN RE:

SHENGDATECH, INC.,

                              Debtor.

Case No. BK-11-52649-BTB
Chapter 11

**DECLARATION OF MICHAEL D. KANG IN SUPPORT OF SHENGDATECH LIQUIDATING TRUST'S MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT ALLOWING CLASS 4 PROOF OF CLAIM PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

**Re: Docket No. 895**

I, Michael D. Kang, hereby declare as follows:

1.     I am a managing director of Alvarez & Marsal. I currently serve as the trustee (the "Trustee") of the ShengdaTech Liquidating Trust (the "Trust") and previously served as the chief restructuring officer of ShengdaTech, Inc. (the "Debtor" or "ShengdaTech"). I am over the age of 18 and am mentally competent to make this Declaration.

///

2.      I make this Declaration (the "Declaration"), under the penalty of perjury, in support of the Trust's Motion for Entry of Order Approving Settlement Allowing Class 4 Proof of Claim Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Settlement Motion").

3.      Except as otherwise stated herein, I have knowledge of the facts set forth herein based upon my review of the Settlement Motion, the Insurance Policies, the Plan, the Confirmation Order, the Class 4 Proof of Claim and my knowledge of the Trust's activities.  If called upon to do so, I would testify competently regarding the information contained herein.

4.      Any capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Settlement Motion.

**CLASS 4 PROOF OF CLAIM**

5.      On December 19, 2011, ShengdaTech and the Official Committee of Unsecured Creditors of the Debtor entered into a stipulation that provisionally allowed a class proof of claim on behalf of certain purchasers of the 6.0% Notes due 2018 and 6.5% Notes due 2015 offered for sale by ShengdaTech on May 22, 2008 and December 10, 2010, respectively (collectively, the "Notes"), for any and all claims that they held against ShengdaTech or its estate under securities or other law related to the offer, sale and purchase of such Notes (the "Class 4 Proof of Claim") [D.I. 283].

6.      The Class 4 Proof of Claim was deemed to be a timely filed proof of claim on behalf of individual holders and purchasers of the Notes with respect to "all claims against the Debtor's estate, under securities or other law related to the offer, sale and purchase of the Notes." Class 4 Proof of Claim, ¶¶ H & 1.  The Class 4 Proof of Claim was "provisionally allowed against the Debtor's estate … without any further need for the filing of proofs of claim by individual holders of [Class 4] Claims." *Id.*, ¶ 1. The Class 4 Proof of Claim remained subject to objection on any grounds other than the timeliness of its filing. *Id.*

7.      Based upon the Plan, Class 4 consists of all "Noteholders' Securities Claims," which are defined under the Plan as "any Claim asserted by the purchasers of the Notes or the current holders of the Notes that arise from the rescission of a purchase or sale of a security of the Debtor or of an Affiliate of the Debtor, for damages arising form the purchase or sale of such a security, or for reimbursement or contribution Allowed under section 502 of the bankruptcy Code on account of such Claim."  Plan, § 1.78.

At the time of confirmation of the Plan, this Class 4 Proof of Claim constituted a provisionally allowed claim falling within Class 4 of the Plan and was the reason that Class 4 existed under the Plan.

8.      Based upon the Plan, the Trust had up to 180 days after the Effective Date to object to all proofs of claim.  Therefore, in order to comply with this requirement, on February 26, 2013, the Trust filed an Objection to the Class 4 Proof of Claim (the "Initial Objection") [D.I. 750] and requested that the hearing on the Initial Objection be continued to a later date to be re-noticed by the Trust or any other appropriate party.  In the Initial Objection, the Trust only objected to the Class 4 Proof of Claim on the basis that it was a "contingent, unliquidated and/or disputed" claim.  Stating that it had filed the Initial Objection to comply with the claim objection deadline under the Plan, the Trust continued the hearing on the Initial Objection and reserved its rights to supplement the Initial Objection, at a later date, as appropriate.  Initial Objection, at ¶ 20.

9.      On April 1, 2013, this Court entered an Order continuing the hearing on the Initial Objection to a later date upon due and proper notice by the Trust or any holder of the Class 4 Proof of Claim.  [D.I. 766].  This Order also provided that the Trust reserved all rights to amend the Initial Objection in connection with any continued hearing on the Initial Objection, and, likewise, that any holder of the Class 4 Proof of Claim reserved any and all rights to file a response to the Initial Objection or any amended objection in connection with any continued hearing on the Initial Objection.  *Id.*

10.     Pursuant to the Court's April 1, 2013 order, on October 15, 2014, certain holders of the Class 4 Proof of Claim (the "Note Purchasers") filed a Request for Allowance of Claims and Response to Objection of the ShengdaTech Liquidating Trustee to the Allowance of Such Claims (the "Request for Allowance") [D.I. 878], seeking an order allowing the Class 4 Proof of Claim in the aggregate amount of at least $75,356,783.

**INSURANCE POLICIES**

11.     Prior to its bankruptcy, ShengdaTech maintained three insurance policies from three different carriers: (i) Zurich American Insurance Company ("Zurich"), that provided for $5 million of insurance coverage (the "Zurich Policy"), (ii) Federal Insurance Company, a member of the Chubb Group of Insurance companies ("Federal"), that provided for $5 million of insurance coverage (the "Federal Policy"), and (iii) Ironshore Indemnity, Inc. ("Ironshore," together with Zurich and Federal, the

DECLARATION OF MICHAEL D. KANG IN SUPPORT OF CLASS 4 SETTLEMENT MOTION

"Insurance Carriers"), that provided for $10 million of insurance coverage (the "Ironshore Policy," together with the Zurich Policy and the Federal Policy, the "Insurance Policies"). The Trust believes that these Insurance Policies would cover any allowed Class 4 Proof of Claim.

12.    On August 14, 2012, this Court entered an Order pursuant to Bankruptcy Rule 9019 approving a settlement relating to the Zurich Policy, whereby Zurich paid approximately $3.75 to the estate to settle matters relating to the Zurich Policy. Subsequent to that settlement, the Trust has paid out Losses (as defined under the Insurance Policies) totaling approximately $1.25 million to exhaust the Zurich Policy.

13.    Earlier this year, after the Zurich Policy was exhausted and after Federal had begun paying defense costs to the Trust and the former independent directors of ShengdaTech, the Trust engaged in discussions with Federal, the first layer of excess insurance coverage, regarding a possible mediation involving Federal, Ironshore, the Trust, the former independent directors of ShengdaTech and all persons with potentially covered claims under the Insurance Policies.

14.    A mediation occurred on September 29 and 30, 2014 in New York City, but such mediation was unsuccessful in reaching a global resolution among all interested parties.

15.    At the time of that mediation, the Trust was informed for the first time that there was only approximately $2 million of insurance coverage remaining under the Federal Policy. Given that the Trust had approximately $465,000 of fees paid or pending against the Federal Policy as of the mediation, presumably the balance (approximately $2.5 million) was paid, or to be paid, to cover defense costs for the former independent board members (which would bring their total defense costs to approximately $4.35 million based on amounts paid by Zurich (approximately $1.1 million), the Trust (approximately $750,000) and presumably Federal (approximately $2.5 million)).

16.    Subsequent to that mediation, on or about October 7, 2014, the ShengdaTech Liquidating Trust was further surprised when the mediator informed the Trust that he had subsequently facilitated a settlement between the plaintiffs in that certain action captioned, *Miller Investment Trust et al.* (the "Miller Trust Plaintiffs") *v. Xiangzhi Chen et al.*, Case No. 1:12-cv-04997-LGS (S.D.N.Y.) (the "Miller Action"), Federal, Ironshore and the Debtor's former independent directors to the exclusion of, and with no effort to involve, the Trust, who has potential covered claims against the Insurance Polices, and all

other noteholders and equity holders of ShengdaTech, who likewise have potential covered claims against those Insurance Policies. Based upon this settlement, the Miller Trust Plaintiffs would receive $2.4 million of the remaining insurance coverage, which is a significant recovery in comparison to their estimated exposure of $8 million, and would exhaust the one insurance policy, the Federal Policy, for which there is no dispute that it covers claims against ShengdaTech, such as the Class 4 Proof of Claim.

17.     Because of the proposed settlement with the plaintiffs in the Miller Action, on October 14, 2014, the Note Purchasers filed a complaint [Adv. Proc. No. 14-05054, D.I. 1] seeking declaratory relief: (i) to determine the extent of the insurance coverage available under the Ironshore Policy, (ii) to determine that the Ironshore Policy and its proceeds are assets of the Trust, (iii) to determine that the Federal Policy and its proceeds are assets of the Trust, (iv) to enjoin the Miller Parties from settling with the Insurance Carriers (given that the Insurance Policies and their proceeds are property of the estate and the confirmation injunction prohibits their use absent order of this Court), and (v) for other relief requested therein (the "Adversary Proceeding"). The Note Purchasers also requested a preliminary injunction or a temporary restraining order in connection with that litigation (the "Preliminary Injunction").

18.     The Trust has filed a motion to intervene in the Adversary Proceeding and join in the request for a Preliminary Injunction.

**SETTLEMENT OF CLASS 4 PROOF OF CLAIM**

19.     Given the upcoming December 4, 2014 hearing on the Request for Allowance, the Trust engaged in discussions with certain of the holders of the Class 4 Proof of Claim regarding a possible settlement of the Class 4 Proof of Claim on behalf of all holders and in a manner equitable to all holders.

20.     Based upon the settlement reached, the Class 4 Proof of Claim will be allowed in the amount of $50,000,000.00. Mutual releases will be exchanged between the holders of the Allowed Class 4 Claim and the Trust for post-effective date actions.

21.     To the extent that the Allowed Class 4 Claim receives any proceeds of the Insurance Policies, all such insurance proceeds shall be distributed on a pro rata basis to all Class 4 Claimholders, net of costs and expenses to be agreed to by Grant & Eisenhofer and the Trust (the "Shared Recovery"); *provided, however*, to the extent the Bankruptcy Court permits the Miller Trust Plaintiffs to proceed with

their pending settlement, pursue their own actions against insurance proceeds or the Miller Trust Plaintiffs otherwise negotiate their own settlement with the Insurance Carriers, then they shall not participate with the other Class 4 Claimholders in the Shared Recovery. The Trust negotiated this term of the settlement agreement in order to attempt to ensure an equitable distribution of all remaining insurance proceeds among the holders of the Allowed Class 4 Claim.

22.    The balance of the terms of the settlement are intended to limit the Trust's ongoing litigation and other costs, including (a) allowing the Trust to hire G&E as its counsel to pursue collection of the Shared Recovery or conferring standing on the holders of the Allowed Class 4 Claims to pursue collection of the Shared Recovery from the Insurance Policies and (b) ensuring that the costs of distribution, if incurred by the Trust, would be paid from the Shared Recovery.

23.    I have analyzed the facts surrounding the Class 4 Proof of Claim, including, without limitation, any potential defenses to such Class 4 Proof of Claim, the ability of the holders of the Class 4 Proof of Claim to establish damages and the Trust's current financial status and its ongoing financial obligations in China. Based upon this analysis and for the reasons set forth herein, I determined that it was in the best interests of the beneficiaries of the Trust to settle the Request for Allowance on the terms set forth in the Settlement Motion.

24.    Prior to entering into any such settlement, I instructed counsel to the Trust to notify Federal, one of the Insurance Carriers, that the Trust intended to pursue a possible settlement of the Request for Allowance and set forth the basic parameters of the possible settlement. I am informed that Federal advised the Trust that it would consider the settlement and get back to the Trust. To date, Federal has not informed the Trust of its position as to the proposed settlement of the Class 4 Proof of Claim. Under the Federal Policy, the Trust is not authorized to settle any Claim without Federal's written consent, which shall not be unreasonably withheld. Given the Trust's financial condition, given the Trust's views of its defenses to the Class 4 Proof of Claim and given that this settlement will not impact Federal's ability to dispute coverage, Federal should not withhold its consent, other than for litigation purposes. As this Court knows, Ironshore disputes that the Ironshore Policy would cover any claims against ShengdaTech, including the Class 4 Proof of Claim. Therefore, any request for consent from Ironshore would be futile. For these reasons, the Trust believes that it has complied with and met its

obligations to defend under the Insurance Policies and/or any other insurance policies for which a claim may be made by the Trust on behalf of the Debtor's estate.

25.     For all of the reasons set forth herein, I believe that the proposed compromise is fair, reasonable and in the best interests of the Trust, the beneficiaries of the Trust, and the Debtor's estate.

26.     **First**, the proposed compromise is fair and reasonable in light of the probability of success in the litigation.  The Trust would have to defend the Class 4 Proof of Claim that asserts claims, under securities or other laws, related to the offer, sale and purchase of the Notes.  Based upon the publicly reported information concerning the financial irregularities at ShengdaTech and the report of the Special Committee of the Board of Directors of ShengdaTech, the Trust likely would have difficulty pursuing an objection to the Class 4 Proof of Claim and the outcome of such objection is uncertain.

27.     **Second,** the proposed compromise is fair and reasonable in light of the difficulties in collection.  As a fiduciary to the beneficiaries of the Trust, the Trust must consider the ability of the beneficiaries to collect their claims from sources other than the Trust and how the Trust might impact those recoveries.  Based upon the information known to the Trust today, the only source of recovery for those holders of the Class 4 Proof of Claim is the Insurance Policies.  The Insurance Policies are being rapidly depleted by defense costs incurred by both the Trust and, in particular, ShengdaTech's former independent directors.  In addition, to the extent that the Trust incurs legal fees in defending the Class 4 Proof of Claim, those fees may further deplete the Insurance Policies.  As part of the settlement, the Trust will allow the Class 4 Claimholders the ability to pursue collection of the Allowed Class 4 Claim against the Insurance Policies.  While the Insurance Carriers likely will raise defenses to coverage of the Allowed Class 4 Claim, the economic beneficiaries, the Class 4 Claimholders, will be the ones fighting this coverage dispute, not the Trust.

28.     **Third,** the proposed compromise is fair and reasonable in light of the potential delay and expense that could result from litigation of such issues.  The Trust has a finite amount of money available to it.  Presently, the Trust is expending significant resources in connection with the recent takeover of a factory in China.  The Trust is doing everything possible to conserve its assets to attempt to generate recoveries in China.  Expending limited Trust resources defending the Class 4 Proof of Claim, which

DECLARATION OF MICHAEL D. KANG IN SUPPORT OF CLASS 4 SETTLEMENT MOTION

1    defense will be difficult and, the outcome of which is uncertain, is not in the interests of the beneficiaries

2    of the Trust.

3          29.     **Fourth**, the proposed compromise is the product of good faith, arms' length negotiations,

4    and reflects the parties' assessments of the strengths and weakness of their respective positions. All of the

5    parties acted in good faith and without any collusion and the compromise reflects the parties' respective

6    assessments of the complexity of the issues and constitutes a fair and equitable result.  Accordingly, in

7    light of the general policy in favor of settlements, the Court should approve the compromise.

8          30.     **Finally**, the proposed compromise is in the best interests or paramount interests of all

9    beneficiaries of the Trust.  As noted above, it allows the Trust to focus its limited resources on its efforts

10    in China.  In addition, the settlement provides for the disallowance of $25,356,783, or 33.6% of the Class

11    4 Claims held by the Note Purchasers assertable against the Trust's assets, without the need for protracted

12    litigation.  From the Trust's perspective, it believes that it is reducing the Class 4 Proof of Claim by as

13    much as $100 million.  Moreover, the Trust has obtained the agreement of the Note Purchasers, as part of

14    this settlement, that the Class 4 Proof of Claim is allowed for all holders of the Class 4 Proof of Claim,

15    other than possibly the Miller Trust Plaintiffs, and not just allowed for the Note Purchasers.  In addition,

16    the Trust notes that if the Miller Trust Plaintiffs are, for example, allowed to consummate the $2.4

17    million settlement, they will be receiving approximately a 30% recovery on account of the Notes that

18    they previously held.  To provide them with a further recovery on account of the Allowed Class 4 Claim

19    would be inequitable and they would receive a windfall in comparison to other Class 4 Claimholders.

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28

DECLARATION OF MICHAEL D. KANG IN SUPPORT OF CLASS 4 SETTLEMENT MOTION

31.     I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of November, 2014.

Michael D. Kang, in his capacity as the
Trustee of the ShengdaTech Liquidating Trust